ANDREW S. OLSON *vs.* ST. PAUL & DULUTH RAILROAD COMPANY.

March 30, 1891.

**Railway—Injury to Passenger—Boarding Moving Train—Direction of Conductor.**—The conductor of a railway train has control of its movements, and represents the corporation, and persons boarding a car with his consent have a right to rely upon his assurance that it is safe to undertake so to do before the train moves.

**Same—Person in Charge of Stock in Freight-Car.**—Where a party having the care of stock in a freight-car, requiring his attention, attempted to enter the car with the sanction of the conductor, and under his assurance that it would be safe, and that he would have ample time to do so before the train moved, and was injured by the sudden and unexpected movement of the train while in the act of entering the car, *held*, that the company was liable.

**Same—Damages not Excessive.**—Verdict *held* not excessive, in view of the evidence, and the decision of the trial court refusing to disturb it.

Appeal by defendant from an order of the district court for Washington county, *McCluer*, J., presiding, refusing a new trial after a verdict of $10,000 for plaintiff.

*Wm. H. Bliss* and *J. N. Castle*, for appellant. ·

*Arctander & Arctander* and *Fayette Marsh*, for respondent.

VANDERBURGH, J.   The plaintiff's foot was caught and injured between the bumpers of freight-cars while climbing into one containing live-stock which he claims was under his charge, through the alleged negligence of the defendant, in the sudden and unexpected movement of the train, without any signal or notice.   The stock, including horses and cattle, belonged to one Newhaus, and was being transported in two cars from Appleton, on the Manitoba road, to Hinckley, on the defendant's road, and from that station to Duluth by the defendant company.   The plaintiff's testimony tended to show that he assisted Newhaus in loading his stock, and that afterwards he went on board one of these cars at the request of Newhaus, to accompany and help care for the stock, and continued to occupy the same car until he was hurt.   After passing Hinckley, he was in the car where the horses were with no other attendant, and was noticed by the conductor of the train, and, in response to an inquiry of the latter, informed him that he was there in charge of the horses.   The conductor, however, demanded his ticket, and notified him that he must either get out of the car or pay his fare.   Plaintiff then handed five dollars to the conductor, who received it, and promised to get and return him the change.   They were then at Finlayson, where the accident subsequently occurred, and where the conductor informed the plaintiff that the train would remain an hour or more.   Plaintiff thereupon left the train, for a drink of water as he says, and soon after, observing that one of the horses was loose in the car, biting and teasing the others, he started back for the purpose of climbing into the car again in order to secure the horse, when he met the conductor in charge of the train, and informed him that the horse had got loose again in the car, and inquired of him if it would be safe to go in there and tie him up, to which the conductor replied: "Yes, you are perfectly safe, for the train is not going to stir before the passenger comes up."   Relying on this assurance, as he says, he went between the cars, climbed up over the couplings, slid back the door, the only means of ingress, and was in the act of entering, when the train started with a sudden jerk, and he fell back between the

cars, and his foot was caught and crushed between the bumpers. The foregoing is substantially the case as presented by the plaintiff's evidence. There is a sharp conflict between the testimony of the plaintiff and the conductor, who denies that he either expressly or impliedly consented to the plaintiff's riding in or returning to the stock-car, or that he had any conversation with plaintiff in respect to the movement of the train. There is a conflict also between the witnesses as to whether the train was standing on the side or main track. One of the defendant's witnesses testified that one of the horses was loose, as sworn to by the plaintiff, and one also agreed with him as to the location of the train on the side track at the time of the accident. But this is important only as affecting the credibility of the witnesses. The leading questions of fact, whether the plaintiff was charged with any duty in looking after the stock in the car, and was permitted to return to the car for the purpose of hitching the horse, and especially whether the statements that he would be safe in doing so, and that the train would not move were made, were questions to be determined by the jury, and this court will not interfere with the discretion and determination of the trial court in refusing a new trial thereon. The conductor had control of the movements of the train, and so far represented the company. The plaintiff was entitled to rely upon his assurance that it would not be moved, and that it would be safe for plaintiff to visit the car, and the company was bound by his acts and statements in reference to it. If the testimony of the plaintiff is true in respect to his obligation to care for the stock, and they required attention, it was proper for him to enter the car for that purpose, with the knowledge and consent of the conductor, who must have known the situation of the door of the car; and, if the train was not to be moved for a considerable time, we are unable to see that there was anything in plaintiff's conduct in visiting the car which conclusively establishes contributory negligence on his part. It was, at least, a question for the jury. Whether the rules of the company allowed drovers or their servants to ride in stock-cars to watch and care for stock or not, is not, we think, material, under the issues as presented by the evidence in this case. There is no presumption against the authority of the conductor to

allow them to visit the car and look after their stock while stopping at a station; and there is no evidence of any rule limiting his authority. We think the evidence in plaintiff's behalf made a case for the jury. *Wright* v. *London & N. W. Ry. Co.*, 1 Q. B. Div. 252, 257; *Fowler* v. *Baltimore & Ohio R. Co.*, 18 W. Va. 579, 584; *Poole* v. *Chicago, Mil. & St. Paul Ry. Co.*, 53 Wis. 657, (11 N. W. Rep. 15;) *Jacobus* v. *St. Paul & Chicago R. Co.*, 20 Minn. 110, (125, 134.)

2. The trial court also considered the question of excessive damages, and was of the opinion that the amount fixed by the jury, though the verdict was large, was not so far disproportionate to the nature and extent of the injury suffered as to warrant it in setting aside the verdict. We esteem the judgment a large one, and if the trial court had been of the opinion, from its impressions of the case upon the evidence, that the verdict ought to have been set aside, this court would not have interfered. But there was no abuse of discretion in refusing a new trial on that ground. In support of the verdict, the evidence on the part of the plaintiff tended to show, among other things, that the foot was amputated near the ankle, but so as to save the heel. At the time of the trial, more than a year and a half after the injury, there was a running sore on the "stump" of the amputated limb, and he had endured great pain and suffering, which continued up to the time of the trial. He was crippled for life, and his limb, which was exhibited to the jury, was liable to continue to cause him suffering in the future. He was 45 years of age, and had been a carpenter, and able, previously, to earn good wages. Evidence of these and other facts testified to was before the jury. It is a case from the nature of which the trial court was in much better position to judge of the question than an appellate court could be. Each case must stand largely upon its own facts, and the question is one peculiarly for the jury. *Ferguson* v. *Wisconsin Cent. R. Co.*, 63 Wis. 145, (23 N. W. Rep. 123;) *Berg* v. *Chicago, Mil. & St. Paul Ry. Co.*, 50 Wis. 419, 428, (7 N. W. Rep. 347.)

Order affirmed.