WATERS-PIERCE OIL COMPANY v. BRIDWELL.

Opinion delivered April 29, 1912.

1.  PLEADING—EFFECT OF AMENDMENT.—An amended pleading filed as a substitute for the original pleading supersedes it, and the original pleading ceases to be a part of the record.   (Page 347.)

2.  LIBEL AND SLANDER—SLANDER OF ONE'S BUSINESS.—False statements made concerning one's business and injurious thereto are actionable.   (Page 347.)

3.  SAME—LIABILITY OF CORPORATION.—A corporation may be liable for slander as for other torts; but to establish its liability the utterance of the slander must be shown to have been made by its authority or ratified by it, or to have been made by one of its servants or agents in the scope of his employment.   (Page 347.)

4.  SAME—IMPLIED AUTHORITY OF CORPORATE AGENT.—Where plaintiff and defendant corporation were business rivals in the sale of oils, and defendant's employees made slanderous statements concerning the quality of plaintiff's oil, the question whether the slander was uttered within the course and scope of the agent's employment and under the implied authority of the defendant corporation was for the jury if the facts and circumstances in proof might induce a reasonable person to infer that the act was within the scope of the agent's authority.   (Page 348.)

5.  SAME—TRUTH AS DEFENSE.—Where, in an action for slandering plaintiff's business by alleging that the illuminating oil sold by him did not come up to the required test, an instruction to the effect that if the inspectors tested plaintiff's oils and stated that they did not come up to the required tests, defendants are not liable "*if said statements were made after such inspection*" was erroneous as to the phrase italicized.   (Page 351.)

6.  SAME—INSTRUCTION AS TO DEFENSE.—In an action of slander alleged to have been committed in stating that the oils sold by plaintiff were below the legal requirements, where the defense was that the statement made by defendants was based upon the report of the official inspector of oils, an instruction that "it makes no difference whether the inspection made by the authorized inspectors in Arkansas, *if honestly and in good faith made,* was correct or incorrect" was erroneous, as defendants had a right to presume that such inspection was correct without inquiring into the inspector's honesty or good faith.   (Page 351.)

Appeal from Boone Circuit Court; *George W. Reed,* Judge; reversed.

STATEMENT BY THE COURT.

This is an action brought by plaintiff, B. N. Bridwell, against the Waters-Pierce Oil Company and its agents for slander alleged to have been committed by making defamatory statements in regard to the inspection and quality of the

oil, which he was engaged in selling. The evidence on the part of the plaintiff tended to establish substantially the following facts: The Indian Refining Company and the Waters-Pierce Oil Company were rival corporations, engaged in the business of selling illuminating oils and kindred products in Boone and other counties of the State of Arkansas. The plaintiff made a contract with the Indian Refining Company where he had the exclusive agency for the sale of its oil in the territory named. E. C. Hodges was the salesman in charge for selling the oil for the Waters-Pierce Oil Company in that territory, and J. H. Shattuck and Jim Taylor were salesmen under him. Bridwell had an established trade in the territory, and a salesman of the Waters-Pierce Oil Company went to his customers and told them that the oil sold by the plaintiff would not stand the test of inspection prescribed by the laws of the State of Arkansas. They said to the customers of Bridwell's that both they and Bridwell were subject to indictment for selling the oils purchased from him. This had the effect of causing Bridwell's customers to quit purchasing oil from him and ruined his business. The oil sold by him, when inspected, stood the test required by the laws of the State. The statements made by the agents of the Waters-Pierce Oil Company were made for the purpose of inducing Bridwell's customers to quit buying oil from him and to buy from the Waters-Pierce Oil Company.

On the other hand, Hodges, Shattuck and Taylor all testified that they were not authorized by the Waters-Pierce Oil Company to state that the oil sold by the plaintiff, Bridwell, would not stand the test provided by the laws of the State, and that they had no authority to make such statements. Evidence was also introduced by the defendants tending to establish the fact that the oils sold by Bridwell would not stand the test prescribed by the inspection laws of the State. There was a trial before a jury, which resulted in a verdict for the plaintiffs against all the defendants for $800. The defendants have duly prosecuted an appeal to this court.

*J. W. Story* and *Mehaffy, Reid & Mehaffy,* for appellant.

1. The amended and substituted complaint states a wholly different cause of action from the original complaint,

and defendant had no opportunity to try the case made by it. 21 S. E. 669; 4 Enc. Pl. & Pr. 83, 86; 76 S. W. 912; 67 Ark. 142.

2. Court erred in its charge to the jury.  55 Ark. 300. Instruction No. 7 correctly stated the law, and it was error to modify it.

3. Mere puffing, trade talk, or lying in trade is not actionable.  Bishop on Cont. § 664-5; 31 Ark. 72.

4. A corporation is not liable for slander by its agents, unless made by its authority, or ratified by it, or done within the scope of employment.

*E. G. Mitchell, Pace & Pace* and *J. M. Shinn*, for appellee.

HART, J., (after stating the facts).  The plaintiff filed an amended and substituted complaint.  An amended pleading filed as a substitute for the original pleading supersedes it, and the original pleading ceases to be a part of the record. 31 Cyc. 465.

The statements which are made the basis of this action are that the agents of the Waters-Pierce Oil Company, while engaged in selling its oil, stated to the customers of the plaintiff that his oil would not stand the test prescribed by the inspection laws of the State of Arkansas, and that both plaintiff and his customers in selling said oil were acting in violation of the criminal laws of the State, and were subject to indictment. The complaint alleges that these statements were made of and concerning plaintiff's business and were injurious thereto. Hence the complaint stated a good cause of action.  25 Cyc. 326; *Studdard* v. *Trucks*, 31 Ark. 726; *Haney Manufacturing Co.* v. *Perkins*, 78 Mich. 1; *Blumhardt* v. *Rohr*, 70 Md. 328. See also case note to *Victor Safe & Lock Co.* v. *Deright*, 8 Am. & Eng. Ann. Cas. pp. 810-811.

There is some conflict of authority in respect to the liability of a corporation for slander; but, inasmuch as a corporation must transact its business and perform its duties through natural persons, it is now well settled that a corporation is liable in damages for slander as it is for other torts.  To establish its liability, the utterance of the slander must be shown to have been made by its authority or ratified by it, or to have been made by one of its servants or agents in the scope of his employment and in the course of the business in which he is

employed. *Payton* v. *People's Credit Clothing* (Mo. App.) 118 S. W. 531; *Penn. Iron Works* v. *Henry Voght Machine Co.,* 8 L. R. A. (N. S.) 1023; *Rivers* v. *Yazoo & Miss. Valley Rd. Co.,* 9 L. R. A. (N. S.) 931 (Miss.); 43 So. 471; *Hypes* v. *So. Ry. Co.,* 82 S. C. 315, 17 Ann. Cases 620; *Sawyer* v. *Norfolk & So. Rd.,* 9 A. & E. Ann. Cases, 440; 142 N. C. 1; *Victor Safe & Lock Co.* v. *Deright,* 147 Fed. 211, 8 Ann. Cases 808; *Buffalo Lubricating Oil Co.* v. *Standard Oil Co.,* 42 Hun (N. Y.) 153.

In section 279 of Wood on Master & Servant, the author says: "The question usually presented is whether, as a matter of fact or of law, the injury was received under such circumstances that, under the employment, the master can be said to have authorized the act; for, if he did not, either in fact or in law, he can not be made chargeable for its consequences, because, not having been done under authority from him, express or implied, it can in no sense be said to be his act, and the maxim previously referred to does not apply. The test of liability in all cases depends upon the question whether the injury was committed by the authority of the master, expressly conferred or fairly implied from the nature of the employment and the duties incident to it."

And again the same author, in section 307, says: "The simple test is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By 'authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his express and positive orders."

In the case before us, there is no evidence of express authority to utter the defamatory words given to the agents by the corporation, nor of any subsequent ratification on the part of the corporation. Of course, the mere utterance of the defamatory language can not authorize the inference that they were done by the agents in the course of their employment. It is not necessary, however, that there be some evidence of authority, express or implied, given to the agent to make the defamatory statements; but there must be some

evidence from which an authority might be implied on the part of the agent to represent the corporation as within the apparent scope of his employment in regard to the defamatory statements.

The issue of whether authority to utter the slander should be implied becomes one of fact for the jury where the facts and circumstances in proof would induce a reasonable person to infer that the act is within the scope of the agent's authority; but if only one inference should be drawn from the evidence, and that is a want of authority, the question becomes one of law for the court. Applying these principles to the instant case, the jury might have found from the testimony of the plaintiff the following facts: Hodges was in charge of the sale of oil of the Waters-Pierce Oil Company in the counties of Boone, Carroll and some others of the State of Arkansas. Shattuck and Taylor were also salesmen of the company and under the direction of Hodges. Bridwell, the plaintiff, was engaged in selling oil in the same territory under a contract with the Indian Refining Company, and had a large line of customers in said territory to whom he had previously been selling his oil. The oil had proved satisfactory to his customers. Hodges, Shattuck and Taylor went to a large number of these customers of Bridwell's for the purpose of selling to them the oil of the Waters-Pierce Oil Company. They told Bridwell's customers that the oil sold by him would not stand the test of inspection prescribed by the laws of the State of Arkansas, and that both they and Bridwell were subject to indictment under the laws of the State for selling said oil. These statements were made to the customers for the purpose of inducing them to quit buying oil from Bridwell and to buy from the Waters-Pierce Oil Company. Under these facts and circumstances, the conclusion is reached by a majority of the court that it was a question for the jury whether the slander was uttered within the course and scope of the agent's employment and under the implied authority of the Waters-Pierce Oil Company. In reaching this conclusion, we have not overlooked the case of *Lindsey* v. *St. Louis, I. M. & S. Ry. Co.*, 95 Ark. 334, but think the proper application of the principles there announced support our conclusion. In that case the railway company had sent a special agent to trace some cotton

which was missing, and the special agent accused the station agent at Monticello of stealing it. The full measure of his duty was to trace the missing cotton, and his conduct in insulting the station agent was entirely beyond any authority given him either expressly, or which could be fairly implied from the nature of his employment or the duties incident to it. Nor do we mean to hold that the master could be sued for the slanderous statements made by their travelling salesmen concerning any person they might defame in the course of their travels. For instance, if the salesmen in the present case had made slanderous utterances against the business of a hardware dealer, it could not be said that it was in any wise their duty to speak in disparagement of the products of such dealer. It could not be inferred that such words were spoken in the interest of and to promote the interest of their employer. To lay down such a rule would be ruinous to persons or corporations who are obliged to conduct their business through agents. But the case made by the plaintiff in the present case is wholly different from the illustrations above made. The plaintiffs and the Waters-Pierce Oil Company were competitors in business. They were selling oil in the same territory. It was a part of the salesmen's duty in promoting the business of their employer to seek the customers of their competitor, and try to obtain their custom. The agents were sent out to sell the oil of the Waters-Pierce Oil Company, and while in the actual performance of this duty the slanderous words were spoken in regard to the business of a rival doing business in the same territory, and were spoken for the very purpose of obtaining the business of that competitor for their principal. The jury might have inferred these facts from the evidence adduced by the plaintiff, and consequently might have drawn the inference that the slanderous utterances were made by the agents in furtherance of their employer's business, and that, under the facts and circumstances of the case, they were such as may fairly be said to have been authorized by it. This rule is not unjust to the corporation; for it "tends to induce greater care and caution in the selection of those who are to be intrusted with corporate affairs." Otherwise, it would be extremely difficult to find a case in which a corporation could be held liable for the acts of its

agents in making defamatory statements in regard to the business of its competitors.

2. Counsel for defendants next urge that the court erred in modifying instruction No. 7. The instruction as modified is as follows:

"If you find from the evidence in this case that the inspectors authorized by law in Arkansas made inspection of the oils of plaintiff and stated that they did not come up to the required test, then the defendants and everybody else would have a right to say that they understood or that this was the decision of the inspector, and that it was violative of the law to sell these oils and whoever sold them was subject to prosecution; and if defendants, or any of them, made these statements, this would not make them liable to the plaintiff, *if said statements were made after such inspection,* and your verdict should be for the defendants."

The modification of the instruction appears from the words which are in italics. We think the instruction is erroneous as modified. If the oil sold by the plaintiff could not stand the test imposed by the laws of the State before they could be legally sold, the statements alleged to have been made by the defendants were true, and they had a right to make them. In this view, it could make no difference whether they were made before or after the inspection was made. There is evidence from which the jury might have found that some of these statements were made before the oil was inspected, hence the instruction was prejudicial. The plaintiff bases this cause of action on the alleged falsity of the statements made; and if they were true, although he may have been damaged by their utterance, yet there could be in such case no liability on the part of the defendants.

3. The court modified instruction No. 8, requested by the defendant. The modification is shown by the words, "if honestly and in good faith made," which appear in italics in the instruction, as follows:

"You are instructed that it makes no difference whether the inspection made by the authorized inspectors in Arkansas, *if honestly and in good faith made,* was correct or incorrect, if they made a test and stated that it was below the requirements of the law, then the defendant had a right to make the

statement that whoever made the sale would be prosecuted; and they are not liable to the plaintiff for making such statements, even if they resulted in damage to him."

We also think the court erred in modifying this instruction. The law does not require that a person must at his peril find out whether an officer has honestly and in good faith performed the duties of his office. When the inspection of the oil is made as required by the State, and it does not come up to the requirement, and the inspector so brands it, it is a violation of the law to sell it, and any person has a right to say that much. He is not required to inquire into the honesty and good faith of the officer making the inspection before he can do it.

Other assignments of error are pressed upon us for a reversal of the judgment; but we think they are sufficiently covered by the principles of law above announced, and we do not deem it necessary to discuss them.

For the error indicated in modifying instructions No. 7 and 8, the judgment will be reversed, and the cause remanded for a new trial.

McCULLOCH, C. J., and WOOD, J., concur in the judgment.