SINCLAIR REFINING COMPANY *v.* FULLER.

4-3713

Opinion delivered February 25, 1935.

*V. R. Tomlinson* and *Graves & Graves,* for appellant.

*L. L. Mitchell, U. A. Gentry, E. F. McFaddin* and *Leffel Gentry,* for appellee.

MEHAFFY, J.   The appellee, Homer Fuller, was in the employ of the appellant as a commission agent in the Hope, Arkansas, territory from November 10, 1930,

until April 7, 1931. During that time he operated under two contracts, but they were identical except as to the amount of commissions. Under the contracts he was required to receive, care for and sell gas, oils, lubricants and other products for appellant. He was not to extend credit to any customers without permission in writing from appellant. It was also his duty to assist in collecting the accounts in his territory, and to make reports daily or as often as the appellant required, reporting all sales, collections, deposits and remittances, and to remit promptly all collections. He was liable to the company for any shortage or losses chargeable to him in collections, deposits, or remittances, or in the products, equipment or property coming under his control. Either party had the right to terminate the contract at any time with or without cause.

C. C. Rogers, a traveling auditor for appellant, audited the stock and equipment of appellee and reported a shortage of $439.41. The largest item of this shortage, according to this audit, was 1,677 gallons of H. C. gasoline.

Appellee contended that the gas shortage was not correct. As to the other accounts, appellee said he did not know whether he owed appellant or not, but soon thereafter paid $200 to the auditor.

On April 7, 1931, appellee was discharged, and Sidney Stanford was checked in as commission agent at Hope, and employed appellee to work for him. Shortly thereafter appellee was discharged by Stanford, after Stanford had had a conversation with Sanders.

Appellee brought suit for damages for slander, alleging that appellant's agent, Sanders, stated to Stanford: "That the plaintiff had been checked up short; and, unless he paid to the company the value of such shortage, that he would be reported to the bonding company, and criminal prosecution would be instituted against him." It was alleged that these words were spoken and published with the malicious intent of impeaching appellee's honesty, integrity, veracity and reputation, and exposed him to public hate, contempt and

ridicule; damaged him in his reputation, and caused him to suffer loss of business.

A motion was filed to make the complaint more specific, to which appellee filed a response stating in substance that E. C. Sanders, a special representative of the company, while engaged in the appellant's business, and in furtherance thereof, uttered and published the following slanderous and inflammatory words against the appellee, by saying to Sidney Stanford: "He (meaning the plaintiff herein) is a crook. He took money from the company and went wrong, and he will do you the same way, and you should get rid of him."

It was also alleged that Sanders said to one Thurman Rhodes, the following words: "Well, if that crooked ————— picked them up, I guess they are stolen and gone. He has stolen about $500 from us and made way with it." There were some other charges, but those above mentioned are the principal allegations in the complaint.

The appellant filed answer denying the material allegations in the complaint, and alleging that if Sanders, Sarsgard, or Rogers, or any other servants or agents published the slanderous and defamatory words, that none of the words were spoken, uttered or published by its authority or ratified by it, and none of the acts complained of were done by servants in the course of his employment, or within the scope of his authority. And, while denying that the words alleged to have been spoken were used by the agent in the course of employment, the answer alleged that the words used by its agents were true. The appellant also alleged that the communication was privileged.

In addition to the suit for slander, the complaint contained allegations of indebtedness on account, and asked for judgment for the amount due appellee from appellant. These allegations were denied, and a cross-complaint filed by appellant, asking judgment on the account against the appellee.

There was a jury trial, and a verdict and judgment against the appellant on the slander charge for $8,500, and on the account for $63. The case is here on appeal.

The statements which are made the basis of the slander action are that the agent of the appellant stated that the appellee was a "crook," and "will do the same thing to you. You'd better get rid of him." One of the definitions of "crook" by Webster is: "A person given to crooked or fraudulent practices; a swindler, sharper, thief, forger, or the like."

It is not contended that the words used are not slanderous, but it is earnestly contended that they were not made by the agent in the scope of his authority, and were not authorized or ratified by appellant.

To establish the liability of the appellant, the utterance of the slander must be shown to have been made by its authority, or ratified by it, or to have been made by its servant or agent in the scope of his employment, and in the course of the business in which he is employed. *Waters-Pierce Oil Co.* v. *Bridwell*, 103 Ark. 345, 147 S. W. 64, and cases there cited.

The court said in the Waters-Pierce Oil Company case, *supra*: "The simple test is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in furtherance thereof, and were such as may fairly be said to have been authorized by him. By 'authorized' is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his express and positive orders."

In the instant case, there is no evidence of express authority to utter the slanderous words given to the agent. It is not necessary that the evidence show authority express or implied, to make the defamatory statements, but there must be some evidence from which an authority might be implied on the part of the agent, to represent the corporation, as within the apparent scope of his employment in regard to the slanderous statements.

Sanders testified that he is now the general agent for the Sinclair Refining Company at Little Rock; that in April and May, 1931, he was special representative

for the company in the southeast and southwest half of Arkansas as sales supervisor, supervising the sales and operation of all agencies in this territory. His duties were to see that the duties of each individual were carried out, and the policies of the company carried out, by the entire organization in this territory. Sanders denies that he made the statements to Stanford that he is alleged to have made. But whether he did or not make the statements has been settled by the verdict of the jury. Sanders testified that he had no authority to accuse anybody of crime, but he did have authority to see that agents carried out their duties in a business-like manner. When Sanders is alleged to have made the statements, it was after Fuller had been checked out, shortly after Stanford had been checked in, and after Stanford had employed Fuller to work for him.

Sanders, according to the testimony of Stanford, had authority to check in agents and check them out, and did check Stanford in and check him out.

Thurman Rhodes testified that he was the bulk agent or commission agent at Hope before Fuller took charge. He testified to statements that Sanders made to him.

The authority to utter a slander is implied, and becomes a question for the jury, where the facts and circumstances in proof would induce a reasonable person to infer that the act is within the scope of the agent's authority.

The agent had authority to supervise the sales and operation of the agencies, and to see that each individual carried out the policies of the company. It was certainly within the apparent scope of his authority, in supervising the agents and checking up on them, and seeing that they performed their duties, to make the statement he is alleged to have made. If the evidence of appellee is true, and the jury had a right to believe it, Sanders said he was sent down there to get a statement, and also said, if appellee could not account for the gasoline or fix it in some way, he would have to fire appellee.

It is true that Sanders said he had no authority to fire agents, but whether he did or did not was a question for the jury.

It is claimed that the statements alleged to have been made by Sanders were privileged communications.

On the question of privileged communications it is stated: "If, however, the master does give the character, it must be given under all circumstances without malice. It may be true, or it may be otherwise; but, if untrue, it is important to see whether the master acts only voluntarily—that is, without being asked anything about the servant—or whether he furnishes the statement concerning such person in reply to questions addressed to him as to his or her character. For if an employer voluntarily gives a defamatory account of a former servant which is really false, such a proceeding on his part would raise a presumption of actual malice having prompted him to take the course in question, and so render him liable to an action for slander or libel, malice being, as before stated, the gist of such an action in either case." Newell on Slander and Libel, p. 430.

The same author says: "A defamatory communication when necessary to protect one's own interest is privileged, when made to persons who also have a duty or interest in respect to the matter. In such case, however, it must appear that he was compelled to employ the words complained of. If he could have done all that his duty or interest demanded without libeling or slandering the plaintiff, the words are not privileged." *Id.,* page 450. The communication should not go beyond what the occasion required. *Bohlinger* v. *Germania Ins. Co.,* 100 Ark. 477, 140 S. W. 257: "The protection of the privilege may be lost by the manner of its exercise, although the belief in the truth of the charge exists. The privilege does not protect any unnecessary defamation. In order for a communication to be privileged, the party making it must be careful to go no farther than his interest or his duties require. Where the party exceeds his privilege and the communication complained of goes beyond what the occasion demands that he should publish, and is unnecessarily defamatory of plaintiff, he will not be protected, and the fact that a duty, a common interest, or a confidential relation existed to a limited degree is not a

432

defense, even though he acted in good faith." 36 C. J., p. 1248.

In this case the evidence of appellee shows that the agent said that he was a crook, and according to all the evidence, if the communication was privileged, this went beyond the privilege, and he is not protected. The most that can be said is that the appellant made a mistake as to the gasoline delivered to him and checked him short. There is no evidence that appellee is a crook, and nothing to justify the statement of appellant's agent. The evidence on behalf of the appellee shows, first, that they wrongfully charged him with gasoline that he did not get; that the amount claimed by the appellant to be in the tank was not what either chart showed to be in there, and there is no explanation as to how they came to charge him for the amount of gasoline they did charge was in the first tank. These statements, if made by the appellant's agent at all, were made after he knew the facts. One of appellant's witnesses testified that if he had known the facts shown by the evidence, he would not have charged appellee with shortage. That was when he was first discharged; but at the time of Sanders' conversation it was known that the charges against him were incorrect. Appellee had no means of knowing how many gallons of gasoline were in the tank; he had no chart, no way of ascertaining whether the statement of appellant was correct, and simply accepted it as correct.

The evidence was sufficient to submit to the jury the question of whether the agent, in making the statements, was acting within the apparent scope of his authority, and their finding on this question is conclusive.

The appellant itself asked, and the court gave instructions submitting to the jury the question of whether the statements were made by an agent acting within the scope of his authority; whether it was a privileged communication, and also whether there was evidence of malice. These questions were settled by the jury against the contention of the appellant.

Appellant also contends that incompetent evidence was introduced over its objection. It contended that the

testimony of A. W. Cobb, Sidney Stanford, Thurman Rhodes and Sid Bundy was incompetent.

The statements alleged to have been made by agent Sanders were within the apparent scope of his authority. The evidence was admissible to show malice and damages. It would serve no useful purpose to discuss separately the evidence of each witness, which appellant contends was incompetent.

We have carefully considered the objections urged, and have reached the conclusion that there was no error in admission of testimony.

Appellant also contends that the court committed error in giving and refusing to give instructions. After a careful consideration of all the instructions requested, given and refused, we have reached the conclusion that the court correctly instructed the jury.

It is contended, however, by the appellant, that the verdict is excessive. "While the discretion of the jury is very wide, it is not arbitrary or unlimited discretion, but it must be exercised reasonably, intelligently and in harmony with the testimony before them. The amount of damages to be awarded for breach of contract, or in actions for tort, is ordinarily a question for the jury; and this is particularly true in actions for personal injuries and other personal torts, especially where a recovery is sought for mental suffering." 8 R. C. L. 657, § 199; *Olsen* v. *St. Paul & D. R. Co.,* 45 Minn. 536, 48 N. W. 445; *Calgate Co.* v. *Bross,* 25 Okla. 244, 107 Pac. 425; *Christy* v. *Elliott,* 216 Ill. 31, 74 N. E. 1035.

We said in a recent case: "The amount of recovery in a case of this sort should be such, as nearly as can be, to compensate the injured party for his injury. The suit is for compensation, and compensation means that which constitutes or is regarded as an equivalent or recompense; that which compensates for loss or privation; remuneration." *M. P. Ry. Co.* v. *Remel,* 185 Ark. 598, 42 S. W. (2d) 548; *Safeway Stores, Inc.,* v. *Rogers,* 186 Ark. 826, 56 S. W. (2d) 429.

We have concluded that appellant is correct in this contention. We think that the verdict should not be for more than $5,000, and the judgment will be modified by

reducing the judgment for slander to $5,000. On the question of the account the evidence is in conflict, and the jury has found against appellant in the sum of $63. It is the settled rule of this court that, where questions of fact are submitted to the jury, its finding is conclusive here.

It follows therefore, from what we have said, that the judgment as modified will be affirmed, and the judgment on the account is affirmed.

McHANEY, J., dissents.