**C. J. SMEDLEY, Plaintiff,**

v.

**LIFE AND CASUALTY INSURANCE COMPANY OF TENNESSEE, Defendant.**

**No. 1705.**

United States District Court
W. D. Arkansas,
Fort Smith Division.
Sept. 12, 1963.

Shaw, Jones & Shaw, Fort Smith, Ark., for plaintiff.

Wright, Lindsey, Jennings, Lester & Shults, Little Rock, Ark., for defendant.

JOHN E. MILLER, Chief Judge.

In this action the plaintiff seeks to recover actual and punitive damages for

alleged slanderous statements made by an employee of the defendant while acting in the scope of his employment to third persons accusing the plaintiff of having committed a felony.

The pertinent allegations of the plaintiff's complaint are set forth in paragraphs III through V, as follows:

## "III.

"At various times and places subsequent to July, 1961, various agents, servants and employees of the Defendant in the scope of and course of their employment have spoken to various persons and individuals words accusing the Plaintiff of embezzling funds belonging to the Defendant.

"During the last part of February or the early part of March, 1962, Charles Core, an agent, servant and employee of the Defendant Company, acting in the scope of his employment and in the course of his employment spoke the following words to Mrs. Mary C. McGowan about the Plaintiff: 'Don't worry about him —he embezzled the Company out of $20,000.00'.

"In March of 1962 the said Charles Core, acting in the scope of and course of his employment for the Defendant Company, stated to Mrs. Wilta C. Price, speaking of the Plaintiff: 'He has stolen money from the Company and padded his expense accounts'. Other agents, servants and employees of the Defendant Company, acting in the scope of and course of their employment for the Defendant, have made similar statements about the Plaintiff to other persons.

## "IV.

"That said defamatory matter communicated as aforesaid was false and untrue and known by the Defendant to be false and untrue; that in making said defamatory publication, the Defendant acted with malice toward Plaintiff.

## "V.

"The Plaintiff has always enjoyed a good reputation in the community in which he lives for honesty, uprightness of character and truthfulness. That said defamatory matter was communicated as aforesaid and was calculated to cause great injury to the Plaintiff's reputation and has caused injury and damage to his reputation and to his physical and mental health and well being; has caused him much anxiety and mental anguish and diminished his earning capacity."

The defendant in its answer denied that the alleged statements were made, and in paragraphs 8 and 9 alleged in the alternative:

"8. Defendant states that if any statements were made by Charles Core, or any other agent, servant or employee of the defendant, concerning the plaintiff, such statement or statements, if any, were not authorized or ratified by the defendant, and such statement, or statements, if any, were not made in the scope of the employment of such agent, servant or employee, or in the course of the business of the defendant in which such servant, agent or employee was employed. Defendant specifically denies that it is liable or responsible for any statement or statements, if any, made by any of its agents, servants or employees, concerning the plaintiff.

"9. Defendant further states that if statements were made by its agents, servants or employees, or any of them, concerning irregularities in the accounts of the plaintiff, that there were irregularities in such accounts, and such statements were true."

On June 3 and 4, 1963, the case was tried to the court, at which time both parties introduced evidence, ore tenus and documentary, and at the conclusion of the trial the case was submitted and taken under advisement by the court.

The parties were directed to submit briefs in support of their respective contentions, which have been received by the court, and the cause is ready for disposition.

The plaintiff is a citizen of the State of Arkansas and a resident of Fort Smith. The defendant is a foreign corporation organized and existing under the laws of the State of Tennessee, with its principal place of business at Nashville, and is authorized to do business in the State of Arkansas by and through its duly authorized agents, servants and employees. The amount in controversy is in excess of $10,000.00, exclusive of interest and costs.

The plaintiff was first employed by the defendant in 1934 as a debit agent, and worked his way up through the company ranks, culminating in his appointment as District Manager in 1947. The District Office is located in Fort Smith, and the plaintiff held the position of District Manager for 14 years. In July 1961 the plaintiff was relieved of his position by the managing officers of the defendant, because in their opinion he had violated company policy and could not be depended upon to effectively carry out his duties as District Manager. In October 1961, after having been given the option of transferring to any district as a debit agent, the plaintiff chose to locate in Little Rock. By May 1962 the plaintiff, because of physical inability to carry on the job of debit agent, attempted to retire on disability. After being examined by the company's doctors, this request was refused and as an only alternative the plaintiff went on permanent early retirement at a reduced pension.

At the trial the defendant offered testimony in support of the affirmative defenses as alleged in paragraph 8 and 9 of its answer, heretofore set forth. The plaintiff objected to such testimony, but the court overruled the objection. However, in view of the conclusion reached by the court in its consideration of the testimony introduced by plaintiff in support of his claim, the court does not reach the issues to which the testimony was directed, and therefore does not consider or determine whether the statements alleged to have been made by Charles Core, the agent of defendant, were slanderous, or whether he was acting within the scope of his employment if he, in fact, made such statements, or whether the defendant ratified such statements if they were, in fact, made by Core, or whether the irregularities in the accounts of the plaintiff were such as to justify the statements by Core if they were, in fact, made.

This brings the court to a consideration of what it considers is the primary issue in the case, which is whether the statements alleged were slanderous and were uttered by the employee of defendant.

The general rule in Arkansas is that the burden is upon the plaintiff to prove the publication of a slanderous statement by a fair preponderance of the testimony, and it is a question of fact whether the alleged slanderous words were spoken to and heard by third persons. Also, where the alleged slanderous statement is made by an employee of a corporation, the testimony must show that the statements were made in furtherance of the company's business. Safeway Stores, Inc. v. Rogers (1933), 186 Ark. 826, 56 S.W.2d 429.

In the case of Sinclair Refining Co. v. Fuller (1935), 190 Ark. 426, at page 429, 79 S.W.2d 736, at page 738, the court discussed the rules governing whether a slanderous statement was made by an agent of the defendant in the scope of his authority and the effect of ratification in the following statement:

"To establish the liability of the appellant, the utterance of the slander must be shown to have been made by its authority, or ratified by it, or to have been made by its servants or agents in the scope of his employment, and in the course of the business in which he is employed. Waters-Pierce Oil Co. v. Bridwell, 103 Ark. 345, 147 S.W. 64, 66, * * and cases there cited.

"The court said in the Waters-Pierce Oil Company case, supra: 'The simple test is whether they were acts within the scope of his employment; not whether they were done while prosecuting the master's business, but whether they were done by the servant in the furtherance thereof, and were such as may fairly be said to have been authorized by him. By "authorized" is not meant authority expressly conferred, but whether the act was such as was incident to the performance of the duties intrusted to him by the master, even though in opposition to his express and positive orders.'

"In the instant case there is no evidence of express authority to utter the slanderous words given to the agent. It is not necessary that the evidence show authority express or implied, to make the defamatory statements, but there must be some evidence from which an authority might be implied on the part of the agent, to represent the corporation, as within the apparent scope of his employment in regard to the slanderous statements."

In the case of Goodman v. Phillips, 218 Ark. 169, 235 S.W.2d 537, the court set out the criteria for evaluating the defamatory language, both as to its publication by the speaker and its effect on the hearers, in the following statement beginning at page 172 of 218 Ark., at page 539 of 235 S.W.2d:

"We held in Dean v. Black & White Stores, Inc., 186 Ark. 667, 55 S.W.2d 500 (Headnote 1): 'Under Crawford & Moses' Dig., § 2396, (Ark.Stats.1947, § 41-2409, page 136) providing that it is slander to charge one with a crime, it is not necessary that the words themselves show that a crime is charged; if it appears from the connection in which the charge was made, or from the circumstances attending its utterance that it intended or understood to impute a crime, it will be regarded as actionable per se.'

"In Greer v. White, 90 Ark. 117, 118 S.W. 258, 259, this court said: 'Defamatory language must be interpreted as it would be understood by the reader or hearers, taking into consideration accompanying explanations and the surrounding circumstances which were known to the hearer or reader.' 25 Cyc. 357. This implies that attending circumstances not known to the hearers are not to be considered in determining whether or not the words spoken are slanderous in themselves. It is immaterial what meaning the speaker really intended to convey by the language used if the words spoken are, in fact, slanderous, and in Jackson v. Williams, 92 Ark. 486, 123 S.W. 751, 752, 25 L.R.A.,N.S., 840, we find this language:

"'As stated in 25 Cyc. 335, "the rule now is that the words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used, and the ideas they are adapted to convey to those who hear or read them." ' "

█ The court has considered the testimony of Mrs. McGowan and Mrs. Price, the two "hearers," who testified as to the uttering of the alleged slanderous statements by Mr. Core, Agent of the defendant, while in the scope of his employment, as well as the testimony of Mr. Core himself.

According to the testimony of Mrs. McGowan, the publication of the slanderous statement by Core occurred either in the latter part of February or the first part of March 1962 while Mr. Smedley was still employed by the defendant in Little Rock as a debit agent. Mrs. McGowan had been a policyholder of the defendant insurance company for many years, and Core, who had formerly been employed by defendant, had been reemployed as debit agent in the Fort Smith district since October 1961, after the plaintiff had been dismissed as District

Manager in Fort Smith and transferred to Little Rock. On the occasion in question Core was making his weekly or monthly rounds to collect premiums on policies held by various people who were insured by the defendant company. When Core came to the home of Mrs. McGowan, she opened her front door and recognized Core as a former employee of the Orkin Company, a pest exterminating concern, which had done an exterminating job for her in the past and whose work had proven unsatisfactory and not according to the promises of the Orkin Company. Although Core had been with the defendant company for several months, that was the first occasion that he had had to service the policies owned by Mrs. McGowan. A discussion ensued between them, in which Mrs. McGowan was prompted either by her personal dislike of Mr. Core due to her past business dealings with Orkin or by her dislike of the defendant company because of its dismissal of Mr. Smedley as District Manager, to make the statement to the effect that she had a good mind to cancel her insurance policies that she carried with the defendant company. When Core questioned her decision to do so, she told him that she was unhappy with the way the company treated Mr. Smedley. At this point there is a sharp divergence as to what words were spoken by whom. According to Mrs. McGowan, Mr. Core then informed her that she shouldn't be sorry for Mr. Smedley because he embezzled $20,000 from the insurance company and that the company had proof of it. On the other hand, from Mr. Core's testimony, it appears that Mrs. McGowan began to berate him and accused him of telling everybody that the plaintiff had taken $20,000 from the insurance company, and Core answered her by denying this and saying that the only thing he knew was that the plaintiff had been transferred to the Little Rock District as a debit agent and that he did not know the reason why.

A week or two later, Agent Core called on Mrs. Price, who with her husband and family had returned to Fort Smith after an absence of several months. Mrs. Price had had some difficulties with the defendant company when she and her family moved from Fort Smith, since she desired to continue to pay her weekly and monthly premiums through the Fort Smith office because she and her family intended to return to Fort Smith in a relatively short time. However, the company had transferred their account to the home office and this had displeased her. Mrs. Price stated to Mr. Core that she was not pleased with the defendant company's handling of the payments of her premiums, and stated further that she was upset about Mr. Smedley's leaving the Fort Smith district. Here, again, there is a sharp divergence in the witnesses' testimony at this point. According to Mrs. Price, Agent Core replied that the plaintiff had stolen money from the defendant company and padded his expense accounts. Furthermore, according to Mrs. Price, who attends the same church as the plaintiff, Faith Assembly of God Church, Core made the additional remark that all the time the plaintiff was stealing money he was going to church and "speaking in unknown tongues." The significance of this remark was that the plaintiff had played the role of the hypocrite in that he participated fully as a member of his church on Sunday and was not a good churchman on occasions other than when he was in church. However, Agent Core's testimony was to the effect that he merely informed Mrs. Price that Mr. Smedley had gone to Little Rock to work for the company as an agent, and that he did not know the reason why. When asked on cross examination why he did not elaborate either to Mrs. McGowan or Mrs. Price as to the plaintiff's leaving Fort Smith, Core replied that he did not learn or know why the plaintiff left Fort Smith until early in 1963 or late in 1962 when he was informed that the plaintiff was bringing the present lawsuit against the defendant.

In the case of both Mrs. McGowan and Mrs. Price, neither one believed the alleged statements made by Core as to any dishonesty on the part of the plain-

tiff and did not repeat the alleged statements except to the son of the plaintiff, John Smedley, who was living in Fort Smith at that time. Mrs. Price had also mentioned the alleged statement to her husband before informing the plaintiff's son of it.

After a full consideration of all the relevant evidence and circumstances, together with the applicable rules of law, the court is of the opinion that the plaintiff has failed to prove that the slanderous statements as alleged were spoken by Agent Core acting in the course of his employment with the defendant insurance company. The reasons for this conclusion are several. First of which is that the testimony on behalf of the defendant by its managing officers has convinced the court that at the time of the plaintiff's dismissal from his job as District Manager at Fort Smith, the defendant company took very definite measures to insure that the reasons and the details surrounding the plaintiff's dismissal would be known only to the plaintiff himself and four or five managing officers in the company, whose decision it was to either retain, demote or dismiss the plaintiff at that time. In this connection, the testimony of Agent Core that he was not aware of the real reasons behind the plaintiff's dismissal is credible because at the time the alleged slanderous statements were made by him, he could only speculate as to the reasons the plaintiff was dismissed, the same as other subordinate employees who remained in the Fort Smith office. Another reason in support of the court's opinion is based upon the lack of credibility due to prejudice and bias on the part of the plaintiff's witnesses. In the case of Mrs. McGowan she entertained a definite personal dislike for Agent Core, which she admitted, and she was personally acquainted with the plaintiff. Mrs. Price and her husband were fellow church members and close friends of the plaintiff and his wife, and Mrs. Price was displeased with the defendant's handling of her debit account. Furthermore, the undisputed testimony of both Mrs. McGowan and Mrs.

Price was that they had prior knowledge of the plaintiff's dismissal, and at the time of their conversations with Mr. Core, which are at issue in the instant case, they were the first to mention Mr. Smedley's dismissal and transfer to Little Rock as a debit agent.

Since the court has found that there was no defamation committed by the defendant's agent, the plaintiff is not entitled to recover and his complaint should be dismissed.

Therefore judgment is being entered today dismissing the plaintiff's complaint.