Juanita ROBINSON, Appellant,

v.

MFA MUTUAL INSURANCE COMPANY and Countryside Casualty Company d/b/a MFA Insurance Companies, Appellees.

No. 79–1845.

United States Court of Appeals, Eighth Circuit.

Submitted April 18, 1980.

Decided June 12, 1980.

Rehearing Denied Sept. 11, 1980.

Troy Henry, Parker, Henry & Walden, Jonesboro, Ark., for appellant.

Tom D. Womack, Barrett, Wheatley, Smith & Deacon, Jonesboro, Ark., for appellees.

Before STEPHENSON, Circuit Judge, KUNZIG,* Judge, and McMILLIAN, Circuit Judge.

KUNZIG, Judge.

Plaintiff-appellant in this diversity action seeks compensatory and punitive damages against the defendant-appellee insurance company for its allegedly wrongful refusal to pay and its allegedly deceitful defense against appellant's claim under the uninsured motorist provisions of an automobile insurance policy. The district court[1] granted appellee's motion to dismiss under Fed.R. Civ.P. 12(b)(6), concluding the complaint failed to state a claim for relief cognizable under the law of Arkansas. A case decided by the Court of Appeals of Arkansas *after* the district court's dismissal of appellant's

---

* The Honorable Robert L. Kunzig, Judge, United States Court of Claims, sitting by designation.

1. The Honorable William R. Overton, United States District Judge, Eastern District of Arkansas.

complaint,[2] however, persuades us the district court erroneously predicted Arkansas law. We therefore reverse.

Appellant, Juanita Robinson, an insured of appellee, was involved in an automobile accident July 24, 1974, when the vehicle she was operating was apparently struck by a hit and run vehicle. Appellee, d/b/a MFA Insurance Companies (hereinafter, MFA) had provided Robinson uninsured motorist coverage with a maximum limit of $10,000 for injuries or damages sustained by the insured for which an uninsured motorist would be legally liable. Under appellant's policy, a hit and run vehicle is included within the definition of an uninsured motorist. To recover under the uninsured motorist provision, however, there must have been "physical contact" between the hit and run vehicle and the insured's vehicle.

MFA resisted payment of Robinson's claim and she retained counsel. By letter of August 27, 1974, J. Murl Smith, a branch claims manager of MFA, wrote appellant's attorney offering to settle her claim. The August 27, 1974, letter stated:

We hereby extend to you an offer of $4,600.00, less the insured's $100.00 deductible in settlement of the damages to the insured vehicle.

We will not at this time entertain any type of uninsured motorist settlement as it is our contention the insured's statement as well as the State Police said there was no physical contact between the insured vehicle and allegedly unknown vehicle.

Settlement attempts were evidently unsuccessful for in January 1975 appellant filed the first (not the instant case) of two suits against MFA in the United States District Court (E.D.Ark.).[3] In that case appellant sought the full amount of policy coverage, $10,000, plus interest, attorney's fees and a 12% penalty amount provided by Arkansas law awarded when an insurance company has wrongfully refused or delayed payment of a claim. Ark.Stat.Ann. § 66–

3238, (Supp.1977). MFA defended on three grounds: (1) that there was no "physical contact" between the insured's vehicle and the alleged hit and run vehicle; (2) that appellant's negligence was at least partially responsible for the accident; (3) that appellant did not sustain damages in the amount claimed under the policy.

The case proceeded to trial by jury in November 1977. On November 9, 1977, appellant's attorney elicited the following testimony from Mr. Floyd Langston, an MFA employee:

. . . and ask you to read the last paragraph there to the jury, please.

A. The last paragraph on this?

Q. Yes.

A. 'We will not at this time entertain any type of uninsured motor settlement, and it is our contention that the insured's statement, as well as the State Police, said there was no physical contact between the insured vehicle and an allegedly unknown vehicle.'

Q. Mr. Keton said yesterday under oath that she never said there was no contact, didn't he? (sic)

A. Yes, sir.

Q. The state policeman said he never said it was because he didn't know, didn't he? So, that's just completely false, isn't it?

A. Yes.

Each of MFA's three defenses, including the physical contact issue, was submitted to the jury which rendered a verdict for Robinson of $7,500. Judgment was entered for that amount, no appeal was taken from the judgment and it was satisfied in full. Robinson's claim for the 12% statutory penalty and attorney's fees was defeated because she did not recover the full amount for which she sued, a requirement under Arkansas law. *See Cassady v. United Insurance Co. of America*, 370 F.Supp. 388, 398–99 (W.D.Ark.1974).

2. *I. e.*, Judge Overton did not have the advantage of the Court of Appeals decision before him.

3. *Robinson v. Countryside Casualty Ins. Co.*, No. J–75–C–13 (E.D.Ark., Nov. 11, 1977).

On February 16, 1978, appellant filed her second suit, the one now before us. The complaint alleges the insurance company wrongfully and deceitfully refused to pay appellant uninsured motorist benefits under her policy, though the company knew her claim to be wholly valid. Various theories of recovery are advanced by appellant, including deceit, intentional infliction of emotional distress and outrageous conduct, and the tort of bad faith, committed by the insurance company when it failed to deal in good faith with the insured. To support her allegation appellant points to the letter of the MFA claims manager of August 27, 1974, denying her claim for the reason that the insured and the state police officer said "there was no physical contact between the insured vehicle and allegedly unknown vehicle." Yet, appellant argues, Floyd Langston, another MFA employee, admitted during trial that these statements were false. Appellant contends the insurance company knew all the time it had no tenable defense to her claim but nevertheless deceitfully raised a defense it knew to be false, forcing appellant to sue for her recovery. Compensatory damages of $5,000 are claimed for appellant's attorney's fees, litigation expenses, interest, value of time, embarrassment and distress. Punitive damages of $500,000 are sought for the insurance company's deceitful and malicious conduct.

MFA moved to dismiss appellant's complaint under Fed.R.Civ.P. 12(b)(6) on the primary ground that appellant's tort action did not state a cause of action under Arkansas law. By Memorandum and Order filed August 30, 1979, the district court granted MFA's motion to dismiss. Briefly, the district court first ruled that the Arkansas Supreme Court has not adopted, and predicted it would not adopt, the tort concept of "bad faith" as a basis for imposing liability on an insurer wrongfully denying policy benefits to insureds. Second, even if the Arkansas Supreme Court were to permit a tort bad faith cause of action, the allegations of appellant's complaint are insufficient to state such cause of action. Finally, the district court ruled appellant's complaint to be barred by *res judicata* and

estoppel, for if Robinson had genuinely believed she had been deceived by the insurance company, the time to raise the issue was during trial of her claim for coverage.

Challenging the district court's dismissal, appellant argues the Arkansas Supreme Court would join the growing number of states which now recognize an action in tort by an insured against an insurer for bad faith refusal to pay a valid claim. Appellant also relies on a recent decision of the Arkansas Supreme Court, *M. B. M. Company, Inc. v. Counce*, 596 S.W.2d 681 (Ark.Sup. Ct.) wherein the Court held that one who wilfully causes severe emotional distress to another by outrageous conduct is subject to liability for such distress and attendant bodily harm. Appellee's argument relies for the most part on the district court's opinion.

While the opinion of the district court is both thorough and persuasive, we conclude two factors require its reversal. First, the district court gave insufficient deference to the standards applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). More importantly, however, a recent decision in the Court of Appeals of Arkansas, *Sturgeon v. American Family Life Assurance Company of Columbus*, 589 S.W.2d 207 (Ark.App. 1979) persuades us appellant's complaint states a claim for relief under the law of Arkansas. Discussion of these two issues follows.

## I.

### *Standards for a Motion to Dismiss*

This court recently had occasion to review the standards applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6) in *Garland v. City of St. Louis*, 596 F.2d 784 (8th Cir.), *cert. denied*, 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). Appellant's complaint in *Garland* alleged the City of St. Louis effected a taking of his property (a leasehold) by the destruction of buildings surrounding appellant's location, leaving appellant under a cloud of condemnation for five years and otherwise rendering appellant's leasehold useless. The district

court dismissed the complaint because plaintiff had failed to allege any physical invasion or appropriation of his property. The significant feature of the decision for present purposes is its emphasis on standards governing a motion to dismiss under Fed.R.Civ.P. 12(b)(6). The opinion began by quoting at length from the opinion in *Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir. 1978), *cert. denied*, 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979), a quotation we repeat in full:

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.
>
> \*   \*   \*   \*   \*   \*
>
> [A] complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory. Nor should a complaint be dismissed that does not state with precision all elements that give rise to a legal basis for recovery. Finally, a complaint should not be dismissed merely because the court doubts that a plaintiff will prevail in the action. That determination is properly made on the basis of proof and not merely on the pleadings.

The question, therefore, is whether in the light most favorable to the plaintiff, the complaint states any valid claim for relief. Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. *See also Bramlet v. Wilson*, 495 F.2d 714 (8th Cir. 1974); *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

When the allegations of appellant's complaint now before us are construed favorably to appellant, it simply cannot be said with certainty that appellant would be unable to prove any set of facts entitling her to relief under the law of Arkansas. Of course, an examination of the Arkansas law pertinent to appellant's allegations is required; an examination, however, conducted in the context of the standard described above.

## II.

### Arkansas Law Applicable to Appellant's Complaint

Appellant casts a wide net in her complaint against the insurance company. Her essential allegation is the insurance company knew all along that neither she, nor the State Police Officer, had made statements denying physical contact between her vehicle and the alleged hit and run vehicle. Nevertheless, these alleged statements were the basis for the company's denial of her claim, as evidenced its letter to her attorney dated August 27, 1974, and its defense at trial.\* As her theories of recovery she argues deceit, wilful, outrageous conduct causing her emotional distress and a tort "bad faith" theory.

The parties' briefs and the district court's opinion focused almost entirely on the bad faith tort claim. Not traditionally recognized, this cause of action is now permitted in a growing number of jurisdictions. The basic situation is that an insured has a claim known by an insurer to be valid, yet the insurer nevertheless refuses payment, deliberately misleads, deceives or oppresses the insured by insisting the claim is nonrecoverable, thereby forcing the insured to sue in court for the amount of policy coverage. In addition to the tort of bad faith, theories of recovery for this type of misconduct have also included contract, intentional infliction of emotional distress and fraud. *See* Zurek, *First Party Insurance: Claims, Practices and Procedures in Light of Extra-Contractual Damages Actions*, 27 Drake L.Rev. 666 (1977–78).

In *Findley v. Time Insurance Co.*, 264 Ark. 647, 573 S.W.2d 908 (1978), the Arkansas Supreme Court discussed in general terms adoption of the bad faith tort, but specifically declined to do so in that case because the appellant did not allege any *affirmative* misconduct on the part of the

insurance company. The present case appears distinguishable insofar as appellant does allege affirmative wrongdoing by MFA.[4] Consequently, we may well have been forced to wrestle with an *"Erie* educated guess" as to whether the Arkansas Supreme Court would permit appellant's claim were it not for *Sturgeon v. American Life Assurance Co. of Columbus, Georgia,* 589 S.W.2d 207 (Ark.App.1979) (hereinafter, *Sturgeon* ) issued by the Court of Appeals of Arkansas November 16, 1979.

Plaintiff-appellant in *Sturgeon* purchased a cancer insurance policy from the appellee insurance company. Appellant's complaint alleged that he had been told by agents of the company that the policy would pay if he were diagnosed as having cancer regardless of other benefits he might have. Appellant became afflicted with cancer of the larynx and received treatment at a Veterans' Administration hospital. The insurance company refused payment. Appellant sued for breach of contract, the tort of deceit and claimed punitive damages in tort. The trial court, by order, characterized the insured's claim as one in contract and sustained the company's objections to appellant's interrogatories and requests for admissions relating to punitive damages. The case was appealed to the Arkansas Supreme Court which referred it to the Court of Appeals of Arkansas. Reversing the trial court, the Court of Appeals mentioned the Arkansas Supreme Court's *Findley* decision and said the trial court's order in *Sturgeon* "was tantamount to the dismissal in *Findley* and

to the striking out of a pleading or part of a pleading." *Sturgeon,* 589 S.W.2d 207, 209. Unlike the complaint in *Findley,* however, the *Sturgeon* complaint "stated a cause of action in tort." *Id.* The Court of Appeals of Arkansas held:

> . . . Mr. Sturgeon has filed a complaint which we find to contain all the elements of the cause of action for deceit, a well recognized common law tort. See, *e. g. Ray Dodge, Inc. v. Moore,* 251 Ark. 1036, 479 S.W.2d 518 (1972), and *Cockrum v. Pattillo,* 246 Ark. 594, 439 S.W.2d 632 (1969). See also, Prosser, *Law of Torts,* p. 685 (4th ed. 1971). [589 S.W.2d 207, 209.]

We can detect no material difference between this appeal and the *Sturgeon* holding. Appellant's complaint does not explicitly argue it seeks recovery under the tort of deceit, but it does contain numerous references to the insurance company's allegedly deceitful conduct. At this stage of the proceeding (appeal from a motion to dismiss), given a reading favorable to appellant the complaint states a tort claim in deceit, if nothing else. Robinson is now entitled to appropriate discovery. Under the circumstances, the *Sturgeon* opinion represents the best indication of the law of Arkansas relating to appellant's complaint; we follow it.[5]

We also disagree with the district court that appellant's claim should be barred by *res judicata.* Robinson's present tort claim is independent of her first suit under the insurance policy. In the first suit

---

4. Paragraphs VI(f) and (g) of appellant's complaint, for example, state:

   (f) Defendants made deliberate false statements in refusing insured motorist coverage and denying benefits by wrongfully, fraudulently and deceitfully claiming that both plaintiff and Trooper Weldon Evans of the Arkansas State Police said "there was no physical contact" knowing no such statements were ever made by plaintiff or Trooper Evans. That some of defendants' employees knew the accusations made by defendant's branch claim manager were false but failed and refused to inform plaintiff or her counsel;
   (g) Defendants' false accusations were the result of an unlawful, fraudulent and wicked plan to wrongfully deprive plaintiff of her policy benefits;

5. Under *Sturgeon* it is clear appellant's complaint states a tort claim in *deceit.* Of course, the district judge did not have this case before him, but we share his doubts concerning whether the Arkansas Supreme Court would fully embrace the theory of recovery in *bad faith* (discussed in *Findley* ), as against its closely related cause of action in deceit. Unlike nearly all states now recognizing the bad faith tort cause of action, Arkansas by statute imposes penalties on insurance companies wrongfully refusing to pay valid claims. Ark. Stat.Ann. § 66–3238 (Supp.1977). Our research indicates that no state which has a statutorily prescribed penalty (approximately 14 states total) as Arkansas, has also permitted the bad faith tort by judicial fiat. Louisiana courts, for example, have rejected adoption of the bad faith tort in light of Louisiana's statuto-

Robinson had no reason to believe, at least until trial, that MFA was advancing anything other than bona fide defenses. Now, however, the cause of action is deceit, which if it is to succeed will require proof substantively different from that presented in Robinson's suit for the policy proceeds. *See Robbins v. District Court of Worth City, Iowa,* 592 F.2d 1015, 1017 (8th Cir. 1979); *Roach v. Teamsters Local No. 688,* 595 F.2d 446, 449 (8th Cir. 1979).[6]

Reversed and remanded.

Affirmed.

ry penalty against insurance companies. *Tano Corp. v. Louisiana Health Serv. & Indem. Co.,* 355 So.2d 604 (La.App.1978); *Bye v. American Income Life Ins. Co.,* 316 So.2d 164 (La.App. 1975). In Illinois, a state with a statutory penalty, the intermediate appellate courts are divided with one district, the Fifth, recognizing the bad faith tort, *Ledingham v. Blue Cross Plan, Hospital Service Corp.,* 29 Ill.App.3d 339, 330 N.E.2d 540 (1975), with three other districts, the Fourth, *Urfer v. Country Mutual Insurance Co.,* 60 Ill.App.3d 469, 17 Ill.Dec. 744, 376 N.E.2d 1073, *leave to appeal denied,* 71 Ill.2d 616 (1978), the Third, *DeBolt v. Mutual of Omaha,* 56 Ill.App.3d 111, 13 Ill.Dec. 656, 371 N.E.2d 373, *leave to appeal denied,* 71 Ill.2d 602 (1978) and the First, *Tobolt v. Allstate Insurance Co.,* 75 Ill.App.3d 57, 30 Ill.Dec. 824, 393 N.E.2d 1171 (1979), expressly rejecting the bad faith tort because the state has provided a penalty legislatively. Florida, something of an anomaly, currently has a statutory penalty, has recognized the bad faith tort, but its statutory penalty has been repealed effective 1982. Fla. Stat.Ann. §§ 627.427–.428 (West 1972) (repealed by laws of Florida 1976, ch. 76–168, § 3, eff. July 1, 1982). Apparently, the view is slowly spreading that states will have either the bad faith tort or the statutory penalty, but not both.

6. Our holding on the res judicata issue does not foreclose appellee from raising this issue at a later stage in these proceedings. The issue does not appear sufficiently clear to justify a dismissal on the pleadings.