**John S. FERGUSON, M.D., Plaintiff,**

v.

**UNIONMUTUAL STOCK LIFE INSURANCE COMPANY OF AMERICA, Defendant.**

**No. LRC–78–176.**

United States District Court, E. D. Arkansas, W. D.

Nov. 12, 1980.

John T. Harmon, North Little Rock, Ark., for plaintiff.

Winslow Drummond, Wright, Lindsey & Jennings, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

### FACTS

Plaintiff applied for and secured three policies of disability income insurance from the defendant in early 1975. In the application for each policy he was required to disclose information as to other disability income policies already in force, but no complete disclosure was made. In July, 1976, plaintiff sustained injuries in an accident which apparently rendered him totally disabled for some period of time. He requested his life insurance agent in California to assist him in processing claims. That agent, Mr. David G. Carver, had sold to plaintiff all of his disability insurance policies with the exception of the three issued by this defendant and three other policies issued by Massachusetts Indemnity. The policies in litigation were sold by a Larry A. Davis.

When the agent Carver first learned of the existence of the Unionmutual policies, he promptly advised plaintiff that any claims made on those three policies would probably be controverted by defendant on two grounds: (1) plaintiff had not made a full disclosure of other insurance in force at the time of applying for the three policies issued by defendant; and (2) with respect

to the last two of the three policies issued by defendant, issuance of those policies was conditioned upon plaintiff's canceling the three Massachusetts Indemnity policies, a condition which was never met. The agent further discussed with plaintiff the fact that the three policies issued by defendant contained an "incontestability clause" which established a two year period in which the defendant insurer could either rescind the policies because of material misrepresentations of fact in the policy applications or deny any claims made on those policies. Having the benefit of this information and advice, according to Carver plaintiff authorized him to advise defendant that no claims would be filed and that defendant could close its file on the matter. Then, after expiration of the two year incontestable period, plaintiff filed claims on the three policies, and now contends that the defendant insurer, by reason of the incontestability clause, is precluded from asserting that there were material misrepresentations in the policy applications.

The policies contain the following provisions concerning notice of claim and proof of loss:

*Notice of Claim.* Written notice of claim must be given to the Company within twenty days after the occurrence or commencement of any loss covered by this policy, or as soon thereafter as is reasonably possible. Notice given by or on behalf of the Insured or the beneficiary (if designated in this policy) to the Company at its Home Office in Portland, Maine, or to any authorized agent of the Company, with information sufficient to identify the Insured, shall be deemed notice to the Company.

*Claim Forms.* The Company, upon receipt of a notice of claim, will furnish to the claimant such forms as are usually furnished by it for filing proofs of loss. If such forms are not furnished within fifteen days after the giving of such notice, the claimant shall be deemed to have complied with the requirements of this policy as to proof of loss upon submitting, within the time fixed in this policy for filing proofs of loss, written proof covering the occurrence, the character and the extent of the loss for which claim is made.

*Proofs of Loss.* Written proof of loss must be furnished to the Company at its said office in case of claim for loss for which this policy provides any periodic payment contingent upon continuing loss within ninety days after the termination of the period for which the Company is liable and in case of claim for any other loss within ninety days after the date of such loss. Failure to furnish such proof within the time required shall not invalidate nor reduce any claim if it was not reasonably possible to give proof within such time, provided such proof is furnished as soon as reasonably possible and in no event, except in the absence of legal capacity, later than one year from the time proof is otherwise required.

With respect to the above policy provisions, it appears that the defendant did receive a notice of claim on July 8, 1976 and on August 9, 1976 submitted a claim form to the plaintiff. This form was promptly returned to defendant uncompleted and accompanied by a statement that no claim would be submitted. Plaintiff did not submit a completed claim form until October, 1977. With regard to the failure to return the claim forms, the following testimony appears in the deposition of David G. Carver.

After sustaining an injury in Arkansas in July, 1976, Dr. Ferguson called Mr. Carver by telephone. Carver advised that he would call all of Ferguson's disability insurers, would arrange for issuance of claim forms, and would send those forms to Ferguson. Carver gathered up all of Ferguson's policies, made a list of the companies and the total benefits, and proceeded to work on the processing of claims.

Mr. Carver was not aware of the existence of any of the Unionmutual policies at that time. He later went to Ferguson's home at the request of Mrs. Ferguson and then first discovered the Unionmutual policies. He then called an agent named "Lar-

ry," who had sold the Unionmutual policies to Ferguson. He told Larry (Larry Davis) that the Unionmutual policies were not out of the incontestable period, and, secondly, that the information contained on the Unionmutual applications as to the amount of insurance in force was not correct.

Knowing that the Unionmutual policies could be contested because there had been no full disclosure of existing insurance by Ferguson, Carver testified that he advised Ferguson that the policies were not out of the incontestable period, that the information on the Unionmutual applications was incorrect, and that Unionmutual might not honor any claims. In talking to Ferguson by telephone, Mr. Carver stated that he made it clear that any decision as to the filing of claims against Unionmutual would have to be made by Ferguson himself.

Exhibit 1 to Carver's deposition is a copy of a longhand note which was received by Unionmutual and which reads as follows: "Thank you, but will not need to submit a claim. Please close file. JSF" After looking at this exhibit, Mr. Carver identified the handwriting as his own. Mr. Carver further testified:

Q Do you recall sending that note?

A No, I don't, but that is my handwriting.

Q That is your handwriting. Okay. You can't put anything together with it other than it is your handwriting?

A No, I can't. The only thing I can say is if I were to write something like that, it would only be if—I would not do something like that myself. It would only be if it was done under direction. I would not make a decision like that myself.

At the request of counsel, Mr. Carver had left the room a few minutes before testifying as quoted above, and had produced from his own files certain correspondence. Exhibit 2 to the Carver deposition is a letter of July 27, 1976, directed to Dr. Ferguson at the Baptist Medical Center in Little Rock. After describing claims filed in behalf of Ferguson with Paul Revere, Massachusetts Indemnity, and Monarch Life, Carver wrote:

I have not submitted claims for the Unionmutual policies for the reasons we discussed. Let me know, however, if you wish to do so.

The "reasons we discussed," according to Carver, were the non–disclosures on the applications and that the policies were not out of the incontestable period. Carver did explain to Ferguson what the incontestability clause meant. He left any decision as to the filing of claims to the policyholder.

The policies contain the following incontestable clause:

*Incontestable.* (a) After this policy has been in force for a period of two years during the lifetime of the Insured, it shall become incontestable as to the statements contained in the application; and (b) No claim for loss incurred or disability (as defined in this policy) commencing after two years from the dates of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from the coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

Plaintiff has moved for summary judgment on the basis of the above incontestable clause in the policy, inasmuch as it is undisputed that the policy had been in force for more than two years before claim was made or suit was filed. Defendant in its response relies upon the failure of the plaintiff to submit the claim forms within the time required by the policy and also upon the doctrine of estoppel.

Does the incontestable clause cover non-compliance with policy provisions on notice of claim and proof of loss? Counsel have cited only one case bearing directly on this question—the Arkansas case of *Illinois Bankers' Life Ass'n v. Byassee*, 169 Ark. 230, 275 S.W. 519 (1925). The policy in *Byassee* however contains much stronger language than that in the instant case, since it provided that any claim "shall be forfeited by failure to furnish proof within the time and in the manner above prescribed." Under this wording the court held that the incontestable clause did not apply:

Counsel for appellant contend that the two–year incontestable clause in the policy excludes the defense of failure to furnish proof of loss. Not so. That clause has no application to the requirement for furnishing proof of loss. The defense of failure to make proof of loss under the policy is not a contest of the policy itself, but it is an assertion by way of defense of a failure to perform a condition precedent to recovery. (Id. at 520.)

This case was annotated in 41 A.L.R. 382 under the title, "Incontestable clause as affecting failure to comply with provisions as to proof of loss." The annotator states that he has been able to find no other cases on this question. We have been able to find one other subsequent case on this issue, *Kreinowitz v. New York Life Ins. Co.*, 2 N.Y.S.2d 826 (Sup.1938). The allegations in the pleading, as stated by the New York court, are quite similar to those pled by the parties in the case at bar:

The action is on a policy of life insurance issued on June 6, 1935. The beneficiary is the widow of the insured and seeks to recover the face amount of the policy. The complaint alleges that the insured died on January 15, 1936, and that on July 9, 1937, the plaintiff furnished the defendant with "due proof of the death" of the insured; that the policy contains a clause that it "shall be incontestable after two years from its date of issue except for non–payment of premium and except as to provisions and conditions relating to the Disability Benefit." The answer denies that due proof of death was filed and by way of affirmative defense alleges that the insured made untrue, false, and fraudulent statements which induced the issuance of the policy and that the plaintiff, with others, conspired to defraud the defendant "by withholding and delaying the notice to defendant of the death of Morris Kreinowitz and the filing with defendant of proofs of his death, for a period of over seventeen months, and until after two years from the date of issue of the said policy"; that plaintiff's delay was unreasonable; and that plaintiff and others "fraudulently conspired to and did

lull defendant into a sense of security and concealed from the defendant for a period of over seventeen months from the date of the death of Morris Kreinowitz the fact of his death and the fact that he had suffered from ailments and diseases and had consulted and been examined by physicians on account thereof and had been under observation and treatment in a hospital on account thereof prior to the application for said policy." (Id. at 827.)

Relying on *Byassee* the court held that the incontestability clause was not a bar to a defense that due proof of death was not filed. "There is no obligation upon the defendant to pay until such proofs of death are submitted." *Id.* at 827.

■ Courts are reluctant to strictly enforce the time provisions for giving notice of a claim and submitting proofs of loss, *unless the insurer is prejudiced thereby.* See *Duggan v. Travelers Indem. Co.*, 383 F.2d 871 (1st Cir. 1967). Clearly in the case at bar the defendant insurer was prejudiced by the failure of plaintiff to comply with the policy provisions concerning notice of claim and proof of loss. *Dixie Furniture Co. v. Central Surety & Insurance Co.*, 173 F.Supp. 862 (E.D.Ark.1954), citing *Illinois Bankers' Life Ass'n v. Byassee, supra.* While we might have great hesitation in holding as a matter of law that plaintiff could not now assert his claim on these three policies because of the delay in filing the notice of claim and proof of loss, we do not hesitate to hold that the effect of this delay is to bar the use of the incontestable clause by plaintiff to avoid an attack by defendant on the policy applications. Any further prejudice to the insurer by the delay may be obviated by our holding that the plaintiff may not assert the incontestable clause to avoid defenses pled by the insurer, including fraud in the policy application. We leave this issue to a later resolution. Our holding relies to a considerable extent on the doctrine of estoppel. This doctrine prevents a party, who has failed to act, from claiming a right to the detriment of his adversary when the latter was entitled to rely upon his affirmative action and has acted or failed to act accordingly. It has been successfully invoked by an insurer in a

fact situation similar to that appearing in the case at bar. *McLawhorn v. American Central Life Ins. Co.*, 208 N.C. 709, 182 S.E. 139 (1935).

For the reasons stated above, the plaintiff's motion for summary judgment is denied.