John S. FERGUSON, M.D., Appellant,

v.

**UNIONMUTUAL STOCK LIFE INSURANCE COMPANY OF AMERICA, Appellee.**

No. 81–1276.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1981.

Decided March 29, 1982.

John T. Harmon, North Little Rock, Ark., for appellant.

Winslow Drummond Wright, Lindsey & Jennings, Little Rock, Ark., and Paul W. Willihnganz, for appellee.

Before HEANEY and McMILLIAN, Circuit Judges, and BENSON,* Chief District Judge.

BENSON, Chief Judge.

Dr. John S. Ferguson appeals a district court judgment [1] on a jury verdict in favor of Unionmutual Stock Life Insurance Company (Unionmutual). Plaintiff Dr. Ferguson brought this diversity action against Unionmutual to recover benefits on three disability insurance policies. Dr. Ferguson basically argues that the district court erred in permitting Unionmutual to present a defense based on statements made by Dr. Ferguson in two applications for the three policies notwithstanding the inclusion of certain incontestability clauses in the policies. For the reasons stated below, we affirm.

*Factual Background*

In January 1975, Dr. Ferguson consulted an insurance agent in California, Larry Davis, and submitted an application for disability insurance to Unionmutual. On the application form, the applicant was required to list other insurance in force. Dr. Ferguson listed only three policies, all from Massachusetts Indemnity Co. The three policies provided for monthly disability benefits in the amounts of $200, $800, and $500. Upon reviewing the application, Unionmutual issued a policy granting Dr. Ferguson $2,000 per month disability benefits. In March 1975, Dr. Ferguson submitted through agent Davis another application to Unionmutual for additional disability insurance coverage. On the March application,

---

*Paul Benson, Chief District Judge, District of North Dakota, sitting by designation.

1. The Honorable Henry Woods, United States District Judge for the Eastern District of Arkansas.

Dr. Ferguson listed the January Unionmutual policy and the three Massachusetts Indemnity policies for insurance in force. Also under the March application it was agreed that Unionmutual's issuance of additional policies was conditioned upon Dr. Ferguson discontinuing $1,500 coverage from Massachusetts Indemnity before May 1, 1975. On the basis of the applications, Unionmutual issued two policies, one on March 7, 1975 providing $500 monthly disability benefits and another on April 3, 1975 providing an additional $1,000 monthly disability benefits. All three policies issued by Unionmutual contained the following incontestability clause:

INCONTESTABLE. (a) After this policy has been in force for a period of two years during the lifetime of the Insured, it shall become incontestable as to the statements contained in the application; and (b) No claim for loss incurred or disability (as defined in this policy) commencing after two years from the date of issue of this policy shall be reduced or denied on the ground that a disease or physical condition not excluded from the coverage by name or specific description effective on the date of loss had existed prior to the effective date of coverage of this policy.

In July 1976, Dr. Ferguson fell while exiting a commercial air carrier and suffered a back injury rendering him totally disabled. On the day following the accident, Dr. Ferguson contacted David Carver, the insurance broker who had sold him the Massachusetts Indemnity policies, and instructed Carver to submit disability claims under all the doctor's policies. A notice of claim was sent to Unionmutual, which prompted Unionmutual to send blank claim forms to Dr. Ferguson. Sometime later, Mr. Carver reviewed the Unionmutual policies and discovered that at the time Dr. Ferguson had executed the two applications for the Unionmutual policies, the doctor had disability policies in force which were not disclosed on the applications. Also, it was found that the Massachusetts Indemnity coverage which was to have been discontinued was still in effect. Carver informed Dr. Ferguson of the inconsistencies relative to the applications and discussed with him the existence of the incontestability clauses. Carver explained that the two-year incontestable period had not passed so that Unionmutual would be permitted to contest any claims by asserting a defense based on misrepresentations on the two application forms. Thereafter, Carver sent a letter to Dr. Ferguson stating that the claims on Unionmutual would not be made "for reasons we discussed." The blank claim forms were returned to Unionmutual accompanied by a letter stating "Thank you, but will not need to submit a claim. Please close file. J.S.F." It was later found that the letter was in the handwriting of Mr. Carver who testified he did not remember sending it, but in any event would not have sent such a letter except at the direction of Dr. Ferguson. After expiration of the two-year incontestability period, in October 1977, Dr. Ferguson submitted a completed claim form to Unionmutual. The company denied liability; the doctor sued.[2]

The district court denied plaintiff's motion for a summary judgment[3] and allowed defendant to present a defense based on the statements made in the applications. After a jury trial, the court, based on the jury's answers to interrogatories, entered judgment for the defendant.[4] The judgment

2. The action was originally filed in the Circuit Court of Pulaski County, Arkansas and removed to federal court.

3. The opinion is published at 501 F.Supp. 247 (E.D.Ark.1980).

4. The following interrogatories were submitted to the jury, all were answered in the affirmative:

INTERROGATORY NO. 1: Do you find from a preponderance of the evidence that John S. Ferguson, at the time of applying for the policies in question, failed to disclose to Unionmutual all of his disability insurance coverage then in force with other insurers?
INTERROGATORY NO. 2: If you have answered Interrogatory No. 1 "yes," then answer this interrogatory.
Do you find from a preponderance of the evidence that Dr. Ferguson's failure to dis-

required that upon surrender of the policies to defendant, defendant was to pay plaintiff the sum of all premiums paid on the policies plus interest, $11,149.88.

### Applicable Law

On appeal, plaintiff argues that incontestability clauses are valid provisions in an insurance policy and the insurer cannot ignore the plain language of its policies and raise defenses which are barred by such clauses. We agree; under ordinary circumstances such clauses do bar the specified defenses. *See Great Southern Life Insurance Co. v. Russ*, 14 F.2d 27 (8th Cir. 1926). However, in this case, the conduct of the insured in withdrawing the claim during the running of the two-year contestability period and advising the insurer no claim would be filed and then subsequently refiling the claim after the expiration of the period is not an ordinary circumstance.

In this case, the district court relying, *inter alia*, on the case of *Kreinowitz v. New York Life Ins. Co.*, 2 N.Y.S.2d 826 (Sup.Ct. 1938), stated:

> While we might have great hesitation in holding as a matter of law that plaintiff could not now assert his claim on these three policies because of the delay in filing the notice of claim and proof of loss, we do not hesitate to hold that the effect of this delay is to bar the use of the incontestable clause by plaintiff to avoid an attack by defendant on the policy applications. Any further prejudice to the

insurer by the delay may be obviated by our holding that the plaintiff may not assert the incontestable clause to avoid defenses pled by the insurer, including fraud in the policy application. We leave this issue to a later resolution. Our holding relies to a considerable extent on the doctrine of estoppel. This doctrine prevents a party, who has failed to act, from claiming a right to the detriment of his adversary when the latter was entitled to rely upon his affirmative action and has acted or failed to act accordingly. It has been successfully invoked by an insurer in a fact situation similar to that appearing in the case at bar. *McLawhorn v. American Central Life Ins. Co.*, 208 N.C. 709, 182 S.E. 139 (1935).

*Ferguson v. Unionmutual Stock Life Insurance Co. of America*, 501 F.Supp. 247, 250–51 (E.D.Ark.1980).

On the record before the court, we approve of the action of the district court in allowing the matter to go to the jury, and we affirm the judgment.

---

close to Unionmutual the existence of other disability insurance policies was a misrepresentation of a fact which was material to Unionmutual's acceptance of the policy applications?

INTERROGATORY NO. 3: Do you find from a preponderance of the evidence that Unionmutual issued two policies of disability insurance on the condition that Dr. Ferguson would cancel three other such policies written by Massachusetts Indemnity Company?

INTERROGATORY NO. 4: If you have answered Interrogatory No. 3 "Yes," then answer this interrogatory.

Do you find from a preponderance of the evidence that Dr. Ferguson's failure to cancel the three Massachusetts Indemnity policies was a condition material to Unionmutual's acceptance of the two policy applications?