Edward Paul SCHOLTES, Plaintiff,

v.

SIGNAL DELIVERY SERVICE, INC., Jim Johnson and Chet Dickey, Defendants.

Civ. No. 82–2048.

United States District Court, W. D. Arkansas, Fort Smith Division.

Sept. 21, 1982.

Robert S. Blatt and Stephen M. Sharum, Fort Smith, Ark., for plaintiff.

Blair Arnold, Thompson & Arnold, Batesville, Ark., Audrey P. Forrest and William W. Allport, Beachwood, Ohio, for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

### Introduction

This action arises under 28 U.S.C. § 1332, based upon complete diversity of citizenship. On February 16, 1982, plaintiff, Edward Paul Scholtes, instituted this action against his former employer, Signal Delivery Service, Inc. (hereinafter "Signal"), and two of his former superiors, Jim Johnson and Chet Dickey.

Plaintiff contends that Signal entered into an oral employment contract with him, whereby plaintiff was to be employed indefinitely, except for good cause. Signal discharged plaintiff on or about April 25, 1980, allegedly without just cause.

Plaintiff further asserts that, contrary to Signal's best interests, defendants Johnson and Dickey, plaintiff's superiors, consciously made performance of his employment contract increasingly difficult and maliciously induced Signal to terminate plaintiff.

Finally, plaintiff contends that defendants Johnson and Dickey gave false and misleading information to prospective employers of plaintiff.

Defendants denied these allegations arguing basically that plaintiff's employment was terminable at will and that any communications to prospective employers would have been privileged.

On June 4, 1982, defendants moved for summary judgment, contending that there

is no genuine issue of material fact and that under Arkansas law, defendants are entitled to judgment as a matter of law. Plaintiff has timely responded and the issues are ripe for resolution.

### Discussion

As noted, defendants advance two arguments: (1) That the employment of plaintiff was, as a matter of Arkansas law, terminable at will, and therefore no cause of action could arise upon plaintiff's termination, and (2) That defendants, Johnson and Dickey, as agents of Signal, cannot be held liable for interfering with plaintiff's contractual relations with Signal and any communications they may have made to third parties would necessarily have been privileged.

These arguments will be examined in turn.

### I. The Terminability of Plaintiff's Employment.

Defendants argue that under a contract of employment which designates no definite term or specific duration the employment contract is terminable at the will of either the plaintiff or employer. *Miller v. Mo-Pac Transportation Co.,* 225 Ark. 475, 283 S.W.2d 158 (1955). Therefore any discharge, whether it be with or without cause cannot constitute a breach of contract. *Tinnon v. Missouri Pac. R. Co.,* 167 F.Supp. 675, aff'd 282 F.2d 773 (8th Cir. 1960).

Thus, defendants conclude, Arkansas law requires consideration from the employee in addition to and apart from the services of employment, or requires a bilateral contract in which both parties agree to a specific period of employment, before an employment contract will not be considered terminable at will.

In essence, defendants assert that a unilateral contract of employment is always terminable at will regardless of its terms, absent additional consideration other than the employment itself.

We note that the bilateral/unilateral distinction has fallen into disfavor in recent years. Comment *f* to Section *1* of the *Restatement (Second) of Contracts,* states:

Comment F. Section 12 of the original Restatement defined unilateral and bilateral contracts. It has not been carried forward because of doubt as to the utility of the distinction, often treated as fundamental, between the two types. As defined in the original Restatement, "unilateral contract" included three quite different types of transaction: (1) the promise which does not contemplate a bargain, such as the promise under seal to make a gift, (2) certain option contracts, such as the option under seal (see §§ 25, 45), and (3) the bargain completed on one side, such as the loan which is to be repaid. This grouping of unlike transactions was productive of confusion.

Moreover, as to bargains, the distinction tends to suggest, erroneously, that the obligation to repay a loan is somehow different if the actual delivery of the money was preceded by an advance commitment from the obligation resulting from a simultaneous loan and commitment. It also causes confusion in cases where performance is complete on one side except for an incidental or collateral promise, as where an offer to buy goods is accepted by shipment and a warranty is implied. Finally, the effect of the distinction has been to exaggerate the importance of the type of bargain in which one party begins performance without making any commitment, as in the classic class-room case of the promise to pay a reward for climbing a flagpole.

■ The traditional distinction between a unilateral contract and a bilateral contract is that, in the former, the offer or promise of one party does not become binding or enforceable until there is performance by the other party, whereas, in the latter, it is not performance which makes the contract binding, but rather the giving of a promise by one party for the promise of the other party. *See generally* 17 C.J.S., "Contracts", § 8, pp. 577–80.

■ Under modern contract law, where an offerer invites an offeree to accept by rendering a performance and does

not invite a promissory acceptance, an option contract is created when the offeree begins the invited performance. *Restatement (Second) of Contracts,* Section 45. In most cases the beginning of performance carries with it an express or implied promise to complete performance. Comment d to Section 45, *Rest.*2d Contracts. Further, where the offer does not contemplate or invite a promise by the offeree, the beginning of performance nevertheless completes the manifestation of mutual assent and furnishes consideration for an option contract. *Id.*

Whether Arkansas law recognizes this precise terminology or not, the same result is reached under Arkansas law by way of the "implied" contract. A contract implied in fact does not describe a legal relationship different from that created by express contract. *Steed v. Busby,* 268 Ark. 1, 593 S.W.2d 34 (1980). The parties' course of conduct can establish the existence and terms of such a contract. *Id.* Course of conduct can demonstrate a "meeting of the minds" sufficient to imply mutual promises. *Rice v. McKinley,* 267 Ark. 659, 590 S.W.2d 305 (Ark.App.1979).

As noted in *Abbott v. Ark. Util. Co.,* 165 F.2d 339 (8th Cir. 1948), there is nothing in Arkansas law indicating that where there are mutual promises, the promise to perform services would not uphold the validity of the contract of employment. *Abbott* does indicate that where the contract is unilateral, however, independent consideration may be required. In *Abbott* the trial court granted appellee's motion to dismiss upon the theory that independent consideration was a *sine qua non* of an enforceable term employment contract. The Eighth Circuit, reviewing applicable Arkansas precedents, could find no support for the trial court's holding, and reversed Judge Lemley as being "clearly erroneous."

Thus, independent consideration is not required for an enforceable term employment contract based upon mutual promises.

Furthermore, estoppel has always been recognized as a substitute for consideration.

*Bethell v. Bethell,* 268 Ark. 409, 597 S.W.2d 576 (1980). This is true whether it be promissory estoppel or estoppel *in pais. McEntire v. McEntire's Estate,* 267 Ark. 169, 590 S.W.2d 241 (1979). This doctrine prevents a party who has failed to act from claiming a right to the detriment of his adversary when the latter is entitled to rely on the words or actions of the former and has in fact so relied to his detriment. *Ferguson v. Unionmutual Stock Life Ins. Co. of America,* 501 F.Supp. 247 (E.D.Ark.1980).

Thus, where estoppel is present, the classification of the employment agreement as "unilateral" or "bilateral" is irrelevant.

Therefore, plaintiff is entitled to show that the acts, declarations or promises of agents or employees of Signal, or their failure to act or speak under circumstances where they should do so, in willful disregard of plaintiff, induced or misled him into conduct or forebearance which he would not have undergone but for the misleading influence. This could be shown by establishing that plaintiff "passed up" other favorable employment opportunities, for example, relocated at their instance, or reasonably incurred certain expenses in reasonable reliance upon his continued employment with Signal. Plaintiff is entitled to show that Signal induced him to change his position for the worse or led him to forego a legal right which he possessed. Estoppel arises to prevent injustice to one who has in good faith relied upon action, representations or conduct of another to his detriment. *Collier v. Brent,* 266 Ark. 1008, 589 S.W.2d 198 (Ark.App.1979); *Hester v. Chambers,* 264 Ark. 941, 576 S.W.2d 195 (1979).

Defendants argue that, in any event, there was "good cause" for plaintiff's discharge. Plaintiff asserts that defendants Johnson and Dickey purposely made his performance difficult or burdensome.

As stated by this Court in *Inv. Thrift Corp. v. Hunt,* 387 F.Supp. 517 (W.D. Ark.1974), aff'd 511 F.2d 1161 (8th Cir. 1974):

It is well settled . . . that neither party to an executory contract may take any ac-

tion as relating to the contract that will in any way hinder or delay performance. In *Peter Kiewit Son' Co. v. Summit Constr. Co.*, 422 F.2d 242 (8th Cir. 1969), Judge Gibson of our Eighth Circuit stated the rule as follows:

> It is hornbook law that an implied provision of every contract is that neither party to the contract will do anything to prevent performance thereof by the other party or commit any act that will hinder or delay performance. (Citations omitted).

*Hunt,* id., at 524–25.

Thus, the bare allegation that plaintiff was terminated "with cause" does not end the matter, for once an agreement is established, even if plaintiff was discharged for faulty performance, plaintiff is entitled to show that defendants' actions were responsible. Whether plaintiff will be able to demonstrate this is a matter of proof, not a matter of law.

Plaintiff attacks the "at-will" doctrine from another angle. Plaintiff argues that employees may not be terminated in violation of public policy, regardless of the general "at-will" doctrine.

Support for this contention springs from *M.B.M. v. Counce,* 268 Ark. 269, 596 S.W.2d 681 (1980).

In that case, Ms. Counce had argued that even though she was an "at-will" employee, she stated a valid claim sounding in contract based upon her termination. The Arkansas Supreme Court said of this contention:

> We might well agree with Ms. Counce if there was any indication that she was discharged for exercising a statutory right, or for performing a duty required of her by law, or that the reason for her discharge was in violation of some other well established public policy. That simply is not the case here.

*Counce,* at 273, 596 S.W.2d 681.

At last count, at least thirteen states have adopted the public policy exception to the at-will doctrine. *See Peterman v. Teamsters Local 396,* 174 Cal.App.2d 184, 344 P.2d 25 (1959); *Sheets v. Teddy's Frosted Foods, Inc.,* 179 Conn. 471, 427 A.2d 385 (1980); *Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill.Dec. 559, 384 N.E.2d 353 (1979); *Frampton v. Central Ind. Gas Co.,* 260 Ind. 249, 297 N.E. 425 (1973); *Stephens v. Justiss-Mears Oil Co.,* 300 So.2d 510 (La.App. 1974); *Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977); *Sventko v. Kroger Co.,* 69 Mich.App. 644, 245 N.W.2d 151 (1976); *Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974); *O'Sullivan v. Mallon,* 160 N.J.Super. 416, 390 A.2d 149 (1978); *Savodnik v. Korvettes, Inc.,* 489 F.Supp. 1010 (E.D.N.Y. 1980); *Nees v. Hocks,* 272 Or. 210, 536 P.2d 512 (1975); *Reuther v. Fowler & Williams,* 255 Pa.Super. 28, 386 A.2d 119 (1978); *Harless v. First Nat'l Bank,* 246 S.E.2d 270 (W.Va.1978); *Pierce v. Ortho Pharmaceutical Corp.,* 84 N.J. 58, 417 A.2d 505 (1980). Cases collected in comment, *A New Theory of Liability in Arkansas,* 34 Ark.L.Rev. 729 (1981).

Twelve more states, among them Arkansas, have indicated that they would adopt the public policy exception under appropriate facts. *See Larsen v. Motor Supply Co.,* 117 Ariz. 507, 573 P.2d 907 (Ct.App.1978); *Jones v. Keough,* 137 Vt. 562, 409 A.2d 581 (1979); *M.B.M. v. Counce,* 268 Ark. 269, 596 S.W.2d 681 (1980); *Lampe v. Presbyterian Medical Center,* 41 Colo.App. 465, 590 P.2d 513 (1979); *Jackson v. Minidoka Irrigation Dist.,* 98 Idaho 330, 563 P.2d 54 (1977); *Abrisz v. Pulley Freight Lines, Inc.,* 270 N.W.2d 454 (Iowa 1978); *Johnson v. National Beef Packing Co.,* 220 Kan. 52, 551 P.2d 779 (1976); *Scroghan v. Kraftco Corp.,* 551 S.W.2d 811 (Ky.App.1977); *Keneally v. National Cash Register Co.,* 606 P.2d 127 (Mont.1980); *Mau v. Omaha Nat'l Bank,* 207 Neb. 308, 299 N.W.2d 147 (1980); *Roberts v. Atlantic Richfield Co.,* 88 Wash.2d 887, 568 P.2d 764 (1977); *Ward v. Frito-Lay,* 95 Wis.2d 372, 290 N.W.2d 536 (1980). Id.

As stated in *F. TANNENBAUM, A PHILOSOPHY OF LABOR 9 (1951),* quoted in Blades, *Employment at Will vs. Individual Freedom: On Limiting The Abusive Exer-*

*cise of Employer Power,* 67 Colum.L.Rev. 1404 (1967):

> We have become a nation of employees. We are dependent upon others for our means of livelihood, and most of our people have become completely dependent upon wages. If they lose their jobs, they lose every resource, except for the relief supplied by the various forms of social security. Such dependence of the mass of the people upon others for *all* of their income is something new in the world. For our generation, the substance of life is in another man's hands. (emphasis in original).

Quoted in Comment, 34 Ark.L.Rev. at 744.

■ Thus, we have no hesitancy in concluding that Arkansas law would recognize at least four exceptions to the at-will doctrine, excluding implied contracts and estoppel. These are: (1) cases in which the employee is discharged *for refusing to* violate a criminal statute; (2) cases in which the employee is discharged for exercising a statutory right; (3) cases in which the employee is discharged for complying with a statutory duty; and (4) cases in which employees are discharged in violation of the general public policy of the state.

■ Plaintiff, however, goes further. Plaintiff asserts that this Court should recognize an implied term of at-will employment contract requiring good faith and fair dealing with respect to a decision to terminate the employment.

We are convinced that Arkansas law recognizes such a term implied in *fact,* where, although omitted from the agreement, such is the intention of the parties as inferred from their words and conduct. *Blake v. Scott,* 92 Ark. 46, 121 S.W. 1054 (1909).

■ The question is whether such a term can be implied in *law.* Such a concept is not without foundation. Restatement (Second) of Contracts, Section 205 provides:

> Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

This is the same duty imposed upon buyers and sellers of goods in the State of Arkansas for at least twenty-one years. See *Ark.Stat.Ann.* §§ 85–1–201(19), 85–2–103(1)(b). Exactly why society needs "good faith" in sales of goods but not in employment of those who manufacture them is unclear. This distinction has been rejected by at least one court. In *Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977), the court applied section 205 of the *Restatement (2d)* to an employment contract terminable at will, requiring good faith and fair dealing in decisions relating to termination of employees. See generally Comment a to Reporter's Note to Section 205, Restatement (Second) of Contracts.

The principal case in Arkansas affirming the traditional "at-will" doctrine is *Miller v. Missouri Pac. Transp. Co.,* supra. If this twenty-seven-year-old decision were the most recent pronouncement of the "at-will" doctrine, we might well conclude that Arkansas would now follow the rule of the Restatement (Second). However, in *Counce,* supra, the Arkansas Supreme Court said:

> ... our holdings in such cases as *Miller v. Missouri Pac. Transp. Co.* (citation omitted), lead us to hold that Ms. Counce has failed to establish a cause of action for breach of contract. In that case, the court relied upon the rule that, where no definite term of employment is specified in the contract of employment, and in the absence of other circumstances controlling the duration of the employment, the contract is terminable at will of either party.

*Counce,* 268 Ark. at 273, 596 S.W.2d 681.

Thus, while reversing the "at-will" presumption may be the wave of the future, it is a wave which has yet to reach Arkansas. We do not feel free to disregard a two-year-old decision of the Supreme Court of Arkansas.

This being the case, we cannot be concerned with the relative wisdom of a rule which singles out the employment relationship as an area in which public policy allows the exercise of almost unlimited freedom of

contract on the part of the employers and employees alike.

Therefore, we must respectfully decline to adopt the rule urged by the plaintiff.

In support of defendants' motion, defendants offer the affidavits of defendants Johnson and Dickey.

These affidavits state, in somewhat conclusory terms, that plaintiff was discharged due to inadequate job performance, that plaintiff never received a promise of permanent employment, and that they are not authorized to extend such employment. (See Johnson affidavit, ¶ 2, 3 and 5; Dickey affidavit, ¶ 2, 3 and 5.)

■ Both Dickey and Johnson admit that they were responsible for overall personnel decisions at Signal. Therefore, the question is not merely what authority they had in fact, but what authority they appeared to have. Apparent authority is such authority as a principal proclaims or permits, such authority which a principal by lack of care causes or allows, or such authority as a reasonably prudent man using diligence and discretion would naturally suppose. 2A C.J.S. *Agency* § 157; *Central Surety & Ins. Corp. v. O. & S. Wholesale Co., Inc.*, 193 Ark. 523, 101 S.W.2d 167 (1937). The principal's liability attaches regardless whether the authority was actual or apparent, so long as the third party acts in good faith.

Although the self-serving affidavits of defendants Johnson and Dickey purport to negate the existence of an expressed term contract, they fail to negate the possibilities of such an implied in fact contract or an estoppel. Nor do they negate the possibility of apparent authority of defendants' words or conduct nor of their hindering plaintiff's performance.

■ The materials offered by both parties are somewhat deficient. This benefits the plaintiff in this instance, as the moving party must demonstrate the absence of any material fact. Many material facts, mentioned above, are not reached by either party. Where both parties are silent, the moving party has failed to meet the burden imposed by Rule 56, FRCP. Plaintiffs correctly note that a summary judgment under Rule 56 is an extreme remedy which should be sparingly employed. Any doubt as to whether there is an issue of material fact for trial should be resolved against the moving party. *Williams v. Chick*, 373 F.2d 330 (8th Cir. 1967). The language of *Ford v. Luria Steel and Lumber Corp.*, 192 F.2d 880 (8th Cir. 1951) is most helpful:

> A surmise or belief, no matter how reasonably entertained, that a party cannot prevail upon a trial, will not justify refusing him his day in Court with respect to material issues which are not clearly shown to be sham, frivolous, or so unsubstantial that it would be obviously futile to try them . . . .

■ Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable men might differ as to significance, summary judgment is improper. *Chenette v. Trustees of Iowa College*, 431 F.2d 49, 53 (8th Cir. 1970).

■ Although the material offered in support or opposition to a motion for summary judgment may *not* be employed to *resolve* disputed factual issues, they may be used to determine *whether* any issues *are* in dispute. *U. S. ex rel. Jones v. Rundle*, 453 F.2d 147 (3rd Cir. 1971); *Carter v. Williams*, 361 F.2d 189 (7th Cir. 1966).

Many courts appear to make the Rule 56(c) determination on a case by case basis, without following any prescribed formula. However, several courts have attempted to enunciate a judicial standard for granting summary judgment. These courts have held that a genuine issue exists, thereby precluding summary judgment, as long as the "slightest doubt" remains as to the facts. Wright & Miller, Federal Practice and Procedure: § 2725, p. 508, *citing Clausen & Sons, Inc. v. Theo Hamm Brewing Co.*, 395 F.2d 388 (8th Cir. 1968); *Armco Steel Corp. v. Realty Inv. Co.*, 273 F.2d 483 (8th Cir. 1960), *et al.* Thus, this is the approach utilized by the Eighth Circuit.

Suffice it to say that, however unlikely that plaintiff will prevail, plaintiff's claims have not been shown to be sham, frivolous or wholly unsubstantial. Here it is clear that plaintiff has several avenues available by which he may avoid the effects of the "at-will" doctrine, not negated by defendants. Accordingly, summary judgment is not appropriate with respect to plaintiff's contract claim, as insufficient evidence has been submitted from which we may reasonably conclude that no material issues of fact remain for consideration.

## II. *Plaintiff's Claim for Contractual Interference.*

Plaintiff alleges that defendants Dickey and Johnson, and, by way of *respondeat superior,* Signal, tortiously interfered with the plaintiff's rights by giving false information to prospective employers of the plaintiff. Such actions are more properly termed "injurious falsehoods" or "interference with prospective advantage."

Injurious falsehood consists of the publication of matter falsely derogatory to the plaintiff as to his property, its quality, his business in general, or some element of his personal affairs, of a kind calculated to prevent others from dealing with him, or otherwise to interfere with his relations with others to his disadvantage. Prosser, The Law of Torts, § 122 (4th Ed. 1971).

The similar tort of interference with prospective advantage consists of intentional conduct designed to interfere and prevent another from obtaining a prospective pecuniary advantage which proximately causes such prevention, to plaintiff's detriment. Any manner of intentional invasion of the plaintiff's interests may be sufficient if the purpose is not privileged. Prosser, *supra,* § 124.

These torts are recognized in Arkansas. *Lane v. Chowning,* 610 F.2d 1385 (8th Cir. 1979); *Mason v. Funderburk,* 247 Ark. 521, 446 S.W.2d 543 (1969). Damages may be recovered from one who, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into or continue a business relationship with another, even though the employment is an "at-will" employment. *Mason, supra;* Restatement of Torts, § 766 *et seq.*

Arkansas law regards "privilege" as a defense. *Bishop v. Tice,* 622 F.2d 349 (8th Cir. 1980). The basic elements of the torts are (1) the existence of a valid contractual relationship or business expectance; (2) knowledge of the relationship or expectance on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damages. *Mason, supra.*

Defendants argue that they cannot, as a matter of law, be held liable for plaintiff's termination from Signal. This is because defendants Johnson and Dickey *are* Signal with respect to termination of employment and therefore no "third person" is involved. The logic is inescapable. Thus, although an employer may maliciously terminate an "at-will" employee, the employer may not maliciously induce *others* not to employ the employee.

Defendants assert that neither defendant, Dickey or Johnson, communicated with prospective employers, and that, if they did, such communications were privileged. Defendants Johnson and Dickey state in their affidavits that no such communications were made. (See ¶ 3 and 4 of Defendants' Affidavits).

In response, plaintiff tenders the affidavit of Gwen Burton, employment counselor with Allied Personnel Agency. Ms. Burton states that defendant Johnson advised her that plaintiff was a very poor employee and would give prospective employers the same opinion. Ms. Burton further states that Mr. Johnson advised her that he had to tell Electrofoam (a prospective employer) the "truth" about plaintiff. (See ¶ 4 and 5 of Burton affidavit).

Plaintiff's affidavit establishes that he had reached the decision-making step with the executives in charge of personnel of three prospective employers with a definite salary/benefit/expense package finalized.

All companies advised him that he could have the job if his references "checked out". Plaintiff gave the name of defendant Johnson as a reference to the three employers. After the companies had time to check plaintiff's references, he was extended no offers.

Plaintiff has raised a genuine issue of material fact with respect to whether the defendants made any statements to the three prospective employers. Certainly the issue is not so clear that we can say that there is not the slightest doubt as to the facts. A factual dispute is present.

Nonetheless, if the communications, if any, were privileged, then plaintiff's claim must fail.

■ It is clear that any privilege arising from communications between former employers and prospective employers would be qualified. *Andrews v. Mohawk Rubber Co.,* 474 F.Supp. 1276 (E.D.Ark.1979). Such a privilege is lost if it is abused, if the statements were not relevant to or went beyond the subject-matter or purpose of the inquiry, or if the statements were made from malice. *Andrews,* at 1281, quoting *Bohlinger v. Germania Life Ins. Co.,* 100 Ark. 477, 140 S.W. 257 (1911).

> The Arkansas Supreme Court has said: The privilege ceases to exist upon a finding that the defamatory statement was communicated to one not a party to whom its communication was necessary, or upon a finding that the person making the statement was actuated by actual malice toward the person defamed, or by a finding of implied malice.

*Andrews,* at 1281.

■ In *Dun & Bradstreet, Inc. v. Robinson,* 233 Ark. 168, 345 S.W.2d 34 (1961), the Arkansas Supreme Court made clear that the malice which would remove the protection of privilege is not limited to hate, vindictiveness or animosity but may be found in reckless disregard of the right of another or such conscious indifference to results as could be regarded as willfully wrong.

■ Naturally, statements made by defendants Johnson and Dickey while in the course and scope of employment are imputable to Signal. *Water-Pierce Oil Co. v. Bridwell,* 103 Ark. 345, 147 S.W. 64 (1912); *Sinclair Refining Co. v. Fuller,* 190 Ark. 426, 79 S.W.2d 736 (1935). In reviewing the arguments and the evidence submitted we are convinced that defendants have failed to demonstrate that there is no genuine dispute as to whether such statements were made to prospective employers. Defendants have failed to show that there is no dispute as to whether any of the defendants acted outside the scope of any privilege which may be applicable. As the burden is theirs, defendants' motion for summary judgment with respect to plaintiff's claim for "injurious falsehood" or "interference with prospective advantage" must be denied.

### Conclusion

■ Plaintiff has not pled with a great degree of specificity. Nor is he required to do so. Rule 8(a) *FRCP; Robinson v. MFA Mut. Ins. Co.,* 629 F.2d 497 (8th Cir. 1980). Plaintiff has alleged that he was dismissed in violation of public policy. Defendants have rebutted this by affidavit. Though Arkansas clearly would recognize such a claim, plaintiff has attempted to rely solely on his pleadings with respect this contention. This is impermissible under Rule 56(e). Accordingly, plaintiff will not be permitted to raise the issue at trial.

Additionally, we must decline to imply the term of "good faith" and fair dealing into employment contracts, as Arkansas is what may be termed a *caveat*-employee state in this regard.

However, plaintiffs are free to pursue their contract claim based upon implied in fact agreements, estoppel, or any other theory of which defendants have "fair notice," not addressed in the instant motion by defendants. Plaintiff may pursue his claim based upon disclosure of false derogatory information to prospective employers.

Accordingly, defendants' motion for summary judgment is granted in part and denied in part.